[Cite as *State v. Anderson*, 2016-Ohio-135.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26525 |
| | : | |
| v. | : | Trial Court Case No. 12-CR-1911/1 |
| | : | |
| RICKYM ANDERSON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of January, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

STEPHEN A. GOLDMEIER, Atty. Reg. No. 0087553, and CHARLYN BOHLAND, Atty. Reg. No. 0088080, The Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Rickym Anderson appeals from his resentencing on several charges following our remand to correct the trial court's failure to make consecutive-sentence

findings and its improper award of jail-time credit.

{¶ 2} The facts and procedural history of Anderson's case are detailed in *State v. Anderson*, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, which ordered the remand. Briefly, 16-year-old Anderson and two companions, Dylan Boyd and M.H., robbed two victims in a residential garage at gunpoint, shooting one of the victims and locking the other in the trunk of a car. *Id.* at ¶ 8-12. Boyd was the shooter in that incident. Anderson, Boyd, and another teenager then stole a third victim's purse at gunpoint. Anderson held the gun during that offense and threatened to shoot the victim. *Id.* at ¶ 14. Anderson and Boyd subsequently were apprehended. Anderson admitted involvement in both robberies. He initially was charged in juvenile court. He then was bound over to the general division of the common pleas court for trial as an adult. He was charged with three counts of aggravated robbery, one count of kidnapping, and one count of felonious assault. A firearm specification accompanied each charge. *Id.* at ¶ 18. A jury found Anderson guilty of everything except felonious assault. The trial court imposed an aggregate 28-year prison term. Boyd, who previously had pled guilty, received a nine-year sentence. *Id.*

{¶ 3} In his prior direct appeal, Anderson raised eight assignments of error. First, he argued that the trial court had erred in overruling a suppression motion. Second, he claimed his sentence was unlawfully disproportionate to the sentence Boyd received. Third, he asserted that the trial court had erred in failing to comply with R.C. 2929.14(C), which requires findings for consecutive sentences. Fourth, he challenged the trial court's award of jail-time credit. In his fifth, sixth, and seventh assignments of error, Anderson claimed Ohio's mandatory-transfer statutes, which require certain juvenile cases to be

transferred to adult court, violated due process and equal protection and constituted cruel and unusual punishment. Finally, Anderson's eighth assignment of error alleged ineffective assistance of counsel.

{¶ 4} On review, we overruled the first, fifth, sixth, seventh, and eighth assignments of error. *Anderson* at ¶ 87. We overruled the second assignment of error, which alleged disproportionate sentencing, as moot because we were remanding for resentencing. *Id.* We sustained the third and fourth assignments of error, finding that the trial court had failed to award proper jail-time credit and had failed to make the statutory findings necessary for consecutive sentences. As a result, we vacated Anderson's sentence and remanded the cause "for a new sentencing hearing." *Id.*

{¶ 5} On remand, the trial court held a resentencing hearing on November 19, 2014. During the hearing, defense counsel asked the trial court to impose the same nine-year sentence Boyd had received, arguing that Anderson in fact was less culpable than Boyd. Defense counsel also argued that consecutive sentences were not justified. (Resentencing Tr. at 8-10). The trial court disagreed. It imposed an aggregate 19-year prison term. The aggregate sentence included concurrent 11-year prison terms for the three counts of aggravated robbery in addition to a consecutive five-year term for kidnapping and a mandatory, consecutive three-year term for a firearm specification. (*Id.* at 14-15). The trial court also made the statutory findings for consecutive sentences. (*Id.* at 20-21). In addition, the trial court explained why it believed Anderson deserved a more severe sentence than Boyd. (*Id.* at 16-19). Finally, the trial court recognized that it had increased Anderson's sentence on counts one and two from nine years to 11 years, while reducing his aggregate sentence from 28 years to 19 years. (*Id.* at 22). The trial court

memorialized its resentencing in a November 21, 2014 "amended termination entry." (Doc. #19). At the same time, the trial court separately filed a "supplemental termination entry" containing its findings in support of consecutive sentences. (Doc. #20).

{¶ 6} In his present appeal, Anderson advances seven assignments of error from his resentencing. His first assignment of error challenges the trial court's imposition of an aggregate 19-year sentence. Anderson claims this sentence is impermissibly disproportionate[1] to the nine-year sentence received by Boyd, who pled guilty. Anderson reasons that he and Boyd were "similarly situated" defendants and that the additional 10 years in prison he received amounted to an unconstitutional "trial tax" insofar as it punished him for exercising his right to a jury trial.

{¶ 7} It is beyond dispute that a defendant cannot be punished for refusing to plead guilty and exercising his right to a trial. *State v. Blanton*, 2d Dist. Montgomery No. 18923, 2002 WL 538869, *2-3 (April 12, 2002). "Accordingly, when imposing a sentence, a trial court may not be influenced by the fact that a defendant exercised his right to put the government to its proof rather than pleading guilty." *Id*. Where the record creates an inference that a defendant's sentence was enhanced because he elected to put the government to its proof, we have looked for additional evidence dispelling the inference and unequivocally explaining the trial court's sentencing decision. *Id*.

{¶ 8} Here Anderson contends an unrebutted inference *does* exist that the trial court punished him for exercising his right to a jury trial. According to Anderson, this

---

[1] This is more accurately a consistency argument, regarding whether the sentence is consistent with other defendants' sentences for the same or similar offenses. Proportionality in sentencing more correctly concerns the relationship between the nature of the offense and its resulting sentence.

inference is supported by the fact that Boyd received a nine-year sentence. Anderson asserts that the only apparent distinction between himself and Boyd is that he went to trial whereas Boyd pled guilty. Our record contains little factual information about Boyd's background or what was considered by the trial court in regard to Boyd's sentence, other than it was agreed upon. Nevertheless, Anderson claims the trial court acknowledged that its sentence in his case was influenced by the fact that Boyd pled guilty whereas Anderson did not.

{¶ 9} Upon review, we agree that Anderson and Boyd received different sentences. We also recognize that, in rejecting Anderson's claim that he was *less* culpable than Boyd, the trial court characterized the two defendants as being "equally culpable." (Resentencing Tr. at 18). It does not follow, however, that equally culpable defendants necessarily must receive the same or similar sentences. Although Anderson and Boyd may have had a shared level of criminal culpability for their activity in this case, the record supports a finding that they were not similarly situated in all relevant respects for purposes of sentencing.

{¶ 10} At the resentencing hearing, the State and the trial court both recognized (and Anderson does not dispute) that Boyd had agreed to plead guilty and to testify against Anderson, if requested, as part of a plea deal that included an agreed nine-year prison sentence. (*Id.* at 13, 15-16). The trial court explained that it imposed a nine-year sentence in Boyd's case precisely because it was an agreed sentence that was part of a negotiated deal. (*Id.* at 16). The trial court added that "go[ing] to trial * * * has nothing to do" with the sentences it imposes. *Id.*

{¶ 11} Having examined the record, we conclude that the trial court adequately

dispelled any inference that Anderson's aggregate 19-year sentence included a so-called "trial tax" or penalty for exercising his right to a jury trial. Among other things, the fact that Boyd entered into a plea deal and agreed to testify against Anderson in exchange for an agreed sentence of nine years adequately distinguishes the two cases and provides a valid reason for the different sentences imposed. In essence, Boyd was rewarded for pleading guilty and agreeing to testify against Anderson. It is permissible to reward a defendant by mitigating his sentence when he chooses to waive a constitutional right and cooperate with authorities. *State v. Smith*, 2d Dist. Clark No. 08-CA-37, 2009-Ohio-1041, ¶ 15-16. Anderson, who stood on his rights and went to trial, received no such reward. Although the distinction may be subtle, this does not mean he was punished for exercising his constitutional rights. *Id.* The first assignment of error is overruled.

{¶ 12} In his second assignment of error, Anderson claims the trial court's consecutive-sentence findings clearly and convincingly are not supported by the record. This argument implicates R.C. 2929.14(C)(4), which permits consecutive prison terms

> if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:* * *
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 13}** Here the trial court made the foregoing findings, including findings under both R.C. 2929.14(C)(4)(b) and (c). (Resentencing Tr. at 20-21; Supplemental Termination Entry, Doc. # 20 at 1-2). Under the standard of review set forth in R.C. 2953.08(G)(2), however, Anderson argues that the trial court's findings clearly and convincingly are not supported by the record. *See*, e.*g.*, *State v. Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 15 (applying R.C. 2953.08(G)(2) to determine whether consecutive-sentence findings clearly and convincingly were unsupported by the record). He asserts that his aggregate sentence is disproportionate to Boyd's—an issue that we fully addressed above. He also claims no evidence exists to justify a finding that the harm he caused was so great or unusual that no single prison term would suffice. Finally, he contends his criminal history does not indicate the need for incarceration longer than a single prison term would allow.

**{¶ 14}** Upon review, we do not believe the record clearly and convincingly fails to support the trial court's findings. The trial court first found that consecutive service of the kidnapping sentence was necessary to protect the public from future crime and to punish the defendant. Affirmative support for these findings exists in the PSI report, which details Anderson's criminal history, and the trial transcripts, which reveal the facts underlying his current offenses. Anderson, who was 16 years old at the time of the crimes at issue, had a prior juvenile adjudication for robbery, a second-degree felony if committed by an adult.

(PSI at 5). He violated the terms of his supervision in that case and received a juvenile commitment. (*Id.*). He also had juvenile adjudications for theft and disorderly conduct (fighting). (*Id.*). With regard to the instant offenses, the record reflects that he and two companions smoked marijuana before approaching two victims in a garage. One of Anderson's companions, Dylan Boyd, shot one of the victims in the back as he tried to flee, resulting in the removal of major portions of his intestines and requiring his use of a colostomy bag. *Anderson* at ¶ 7-11. After searching for a set of car keys, Boyd then ordered the other victim into the trunk of a car. While in the trunk, the victim could hear Anderson and his companions rummaging around the car. She also heard Boyd tell someone to grab her purse. *Id.* at ¶ 12. The three teenagers then left and went to an abandoned house where they left the purse and smoked cigarettes found in it. *Id.* at ¶ 14. Accompanied by another friend, Boyd and Anderson later saw a third victim taking out her trash. Anderson approached her with a gun, asked whether she had any money, and threatened to shoot her. In response, the victim, who was developmentally disabled, handed over her purse, which contained a cell phone. *Id.* Police later apprehended Anderson with the cell phone in his pocket. They found a gun 30 to 40 feet away from where he was apprehended. *Id.* at ¶ 16. As a result of the incident, the victim "felt compelled to relocate for her safety" and "is now fearful and paranoid when she takes out the trash." (PSI at 10). When asked about his involvement in the crimes, Anderson stated that he "personally did not commit any offense, but he was hanging around the people that did and he was not under control of himself as the drugs he was on had taken over his mind." (PSI at 4).

{¶ 15} At sentencing, the trial court explained why it found the kidnapping offense

particularly dangerous: "* * * This woman was placed in the trunk of a car and all three people were looking for the keys. Had they found the keys and driven her off, who knows what would've happened. Luckily, they couldn't find the keys, ran away." (Resentencing Tr. at 16-17). The trial court added:

> * * * Now Mr. Anderson, did he say, "Oh, my gosh, I shouldn't have done that. Let me go back to school. Let me go back home?" No. He was the one with the gun at the next offense. And here, there was a handicapped young lady who was frightened, who saw that gentleman—not a kid—with a gun while they asked for her cell phone.
>
> In talking to the police, Mr. Anderson indicated that Mr. Boyd had the gun at the first offense. However, the second offense—oh for—also at the first offense after they placed [the victim] in the trunk, they took her purse, they couldn't find the keys, but they took a credit card, they took the cigarettes, then went somewhere from her, smoked the cigarettes, and apparently made their next plan.
>
> Mr. Anderson, when talking to the police admitted he had the gun at him (sic) at the second offense but pretty much denied culpability. At the time of the presentence report, Mr. Anderson, rather than taking full responsibility, reported he was with some people who decided to rob some people. He said that as a result of the robbery, someone was shot and a female was put in a truck (sic) of the vehicle and her purse was stolen. He stated that he and the people he was with then left the area and robbed another girl. He stated that a short time later, the police came up and

arrested them.

Mr. Anderson advised that he never fired the gun but that at some point in the night he was in possession of it. Asked why he committed the offense, he stated he personally did not comment (sic) any offense but was hanging around with people who did and that he was not under the control of himself as the drugs had taken over his mind, apparently smoking some marijuana earlier in the day and taking a couple of Xanax.

(*Id.* at 17-18).

{¶ 16} The trial court then reviewed Anderson's criminal history (set forth above) and concluded based on (1) the facts of the present crimes, (2) his criminal history, and (3) his continued denial of responsibility, that the sentence it imposed was appropriate. (*Id.* at 19). In our view, these considerations support a finding that a consecutive sentence on the kidnapping charge was necessary to protect the public from future crime and to punish the offender. We certainly cannot say the record clearly and convincingly fails to support these findings by the trial court. The same facts and circumstances discussed above also support the trial court's additional findings that consecutive sentences are not disproportionate to the seriousness of Anderson's conduct and to the danger he poses to the public. Again, we cannot say the record clearly and convincingly fails to support these findings.

{¶ 17} The only other required finding was *either* that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of

conduct adequately reflects the seriousness of the offender's conduct," *or* that "the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(C)(4)(b) and (c). Although the trial court made both of these findings, either one was sufficient. Here the record supports the second finding regarding Anderson's history of criminal conduct demonstrating that consecutive sentences were necessary to protect the public from future crime. Anderson, who was only 16-years-old, already had a prior juvenile adjudication for robbery, a second-degree felony if committed by an adult. He violated the terms of his supervision in that case and served a period of commitment. He also had prior juvenile adjudications for theft and disorderly conduct. After those incidents, he participated in the present crimes, which involved shooting one victim, kidnapping another victim, and robbing them. Later that same day, he pulled a gun on a disabled woman and stole her purse while threatening to shoot her. Even after being convicted, he continued to deny any real responsibility for his actions. In light of these facts, we cannot say the record clearly and convincingly fails to support the trial court's finding that Anderson's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. As a result, we need not consider the trial court's alternative finding that "the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." The second assignment of error is overruled.

{¶ 18} In his third assignment of error, Anderson contends the trial court erred in failing to journalize its consecutive-sentence findings in its sentencing entry, as required

by *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659. In short, Anderson contends the trial court should have journalized its consecutive-sentence findings in its November 21, 2014 "Amended Termination Entry," which it filed at 3:27 p.m., rather than in its November 21, 2014 "Supplemental Termination Entry; Findings in Support of Consecutive Sentences," which it filed at 3:45 p.m. (Doc. # 19, 20).

{¶ 19} Upon review, we find no reversible error in the trial court's method of journalizing its consecutive-sentence findings. In *Bonnell*, the Ohio Supreme Court stated that a trial court must make consecutive-sentence findings at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at ¶ 29. The *Bonnell* court added, however, that an "inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law." *Id.* at ¶ 30. In other words, it does not constitute grounds for reversal, and a trial court may correct its omission with a nunc pro tunc entry, which itself is not appealable. *Id.* at ¶ 31.

{¶ 20} Here the trial court filed an amended termination entry resentencing Anderson to 19 years in prison. Eighteen minutes later it filed a "supplemental" termination entry containing the consecutive-sentence findings it made at the sentencing hearing. The supplemental entry stated that "[t]he findings herein are hereby incorporated within this Court's Sentencing Termination Entry." (Doc. # 20 at 2). Nothing more was required. The third assignment of error is overruled.

{¶ 21} In his fourth assignment of error, Anderson claims the trial court impermissibly punished him for his successful prior appeal when, at resentencing, it increased his sentence on three counts without providing an adequate explanation for

doing so. He argues that an unrebutted presumption of vindictive sentencing exists and that the increased sentence violated his due process rights.

{¶ 22} On the record before us, we find no presumption of vindictiveness and no indication that the trial court punished Anderson for his prior successful appeal. "The U.S. Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), 'created a presumption of judicial vindictiveness that applies when a judge imposes a more severe sentence upon a defendant.' " *State v. Rammel*, 2d Dist. Montgomery Nos. 25899, 25900, 2015-Ohio-2715, ¶ 19, quoting *Plumley v. Austin*, ___ U.S. ___, 135 S.Ct. 828, 190 L.Ed.2d 923 (2015) (Thomas, J., dissenting). The presumption of vindictiveness does not apply, however, every time a defendant receives a higher sentence. *Id.* at ¶ 20, citing *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The presumption applies only when circumstances are such that there exists a "reasonable likelihood" the increased sentence is the product of actual vindictiveness on the part of the sentencing judge. *Smith* at 799, citing *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

{¶ 23} The record here falls short of establishing a reasonable likelihood that Anderson's sentence was influenced by judicial vindictiveness. Prior to Anderson's successful appeal, the trial court imposed the following sentences: (1) two concurrent nine-year prison terms for two counts of aggravated robbery; (2) a consecutive seven-year term for a third count of aggravated robbery; (3) a consecutive six-year term for one count of kidnapping; (4) a consecutive three-year term for three merged firearm specifications, and (5) a consecutive three-year term for another firearm specification that it did not merge. The result was an aggregate 28-year prison term.

**{¶ 24}** We vacated the entire sentence and remanded for a new sentencing hearing.[2] *Anderson* at ¶ 51, 87. On remand, the trial court held a new hearing at which it imposed the following sentences: (1) three concurrent 11-year terms on all three counts of aggravated robbery; (2) a consecutive five-year term for one count of kidnapping, and (3) one consecutive three-year term upon the merger of all four firearm specifications. The result was an aggregate 19-year prison term.

**{¶ 25}** On appeal, Anderson complains about the trial court increasing his sentence on the three aggravated robbery convictions (counts one, two, and three) from two nine-year terms and one seven-year term to three 11-year terms. Although his

---

[2] The basis for vacating the sentence was the trial court's failure to make the requisite consecutive-sentence findings. Although this rationale did not apply to the two counts of aggravated robbery on which Anderson had received concurrent sentences (counts one and two), we drew no such distinction in our prior opinion. *Anderson* at ¶ 51, 87. In fact, after vacating "the sentence" and remanding for a new sentencing hearing, we overruled as moot another assignment of error challenging the aggregate sentence on the basis that it punished Anderson for going to trial, thereby imposing an unlawful "trial tax." We found this issue moot "because Anderson's sentence [was] being vacated, and the matter [was] being remanded for a new sentencing hearing." *Id.* at ¶ 52-54. In retrospect, this court perhaps should not have vacated Anderson's entire sentence. *See generally State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824 (rejecting the "sentencing package doctrine" in Ohio and finding that an error in the imposition of sentence on one count does not permit vacating all sentences imposed for multiple offenses); *see also State v. Franklin*, 2d Dist. Montgomery No. 25125, 2012-Ohio-6223, ¶ 8 ("* * * Ohio has rejected the federal model, which allows the modification or vacation of all sentences imposed for multiple offenses, even when there is an appeal from and reversal of only one of the sentences imposed."). This court did vacate the entire sentence, however, and that unappealed decision was the law of the case with regard to resentencing in the trial court. Consistent with our remand, the trial court proceeded to hold a de novo sentencing hearing on all counts. We note too that Anderson largely benefitted from the trial court resentencing him on all counts. It reduced his prison term for kidnapping from six years to five years. It also merged all four firearm specifications into one and imposed a single, three-year term instead of the two separate three-year terms it originally had imposed.

aggregate sentence decreased from 28 years to 19 years, Anderson cites *State v. Bradley*, 2d Dist. Champaign No. 06CA31, 2008-Ohio-720, and *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, and argues that "in evaluating a sentence for vindictiveness, a reviewing court must consider each sentence individually, not as a package." (Appellant's brief at 12). Anderson then asserts that the record contains no new information justifying the increase in his sentence on counts one, two, and three following his successful appeal. Therefore, he maintains that an unrebutted presumption of vindictiveness exists.

{¶ 26} We find Anderson's argument unpersuasive. Assuming for the moment that Anderson's argument is that the trial court was required to apply the same prior numerical sentences at his resentencing, allowing only reconsideration of the non-mandatory consecutive sentencing, Anderson would have received a 21-year aggregate sentence and not a 19-year sentence. The vacated sentences were 9 years and 9 years and 7 years for three aggravated robberies, six years for the kidnapping and two three-year firearm specifications, one for each of the robbery events that were separated in time and victim. If those same numbers apply, with the trial court making the kidnapping consecutive, as it did upon resentencing, then the sentence is nine years, nine years, and seven years, concurrent for a total of nine years, plus six years for the kidnapping, consecutive for a total of 15 years, plus three years and three years for the two separate firearm specifications, statutorily consecutive, for a total of 21 years, not 19. We fail to see how this lesser sentence is vindictive.

{¶ 27} We also view Anderson's reference to an improper "package" sentence as misplaced. As this court noted in *Bradley*, *Saxon* stands for the proposition that a trial

court may not consider the sanction imposed for each of multiple offenses as a component of a single, overarching sentence. *Bradley* at ¶ 21- 25. As a result, an appellate court can modify, remand, or vacate only the sentence for an offense that is appealed. Upon finding an error with regard to the sentence for one count, it cannot modify, remand, or vacate the entire multiple-offense sentence. *Id.* at ¶ 24. The particular error in *Saxon* involved the appellate court's "reversal of multiple sentences on a finding that one was imposed contrary to law." *Id.* at ¶ 33.

{¶ 28} In the present case, this court previously did vacate all of Anderson's multiple sentences upon a finding that consecutive sentences had been imposed on some counts without the necessary findings. But Anderson did not appeal that decision, and, consistent with our remand, the trial court proceeded to conduct an entirely new resentencing hearing.

{¶ 29} In *State v. Rammel*, 2d Dist. Montgomery Nos. 25899, 25900, 2015-Ohio-2715, this court recently found the sentencing-package doctrine inapplicable where we previously had "reversed the entire sentence and remanded for a new sentencing hearing." *Id.* at ¶ 16. In *Rammel,* the trial court initially had imposed an aggregate eight-year prison sentence for multiple offenses. On appeal, we found that the trial court had exceeded the statutory maximum sentence for some counts and had failed to make the findings necessary to impose partially consecutive sentences. As a result, we vacated the entire sentence and remanded for resentencing. *Id.* at ¶ 2-5. On remand, the trial court reduced the sentence it had imposed on some counts. However, the trial court also reconfigured its prior concurrent-consecutive sentencing, changing the sentence on a breaking-and-entering charge from concurrent to consecutive. The result of this

restructuring was an aggregate seven-year term. *Id.* at ¶ 6. The defendant appealed, arguing that the trial court simply should have reduced his sentence on those counts in which it had exceeded the statutory maximum. Doing so would have resulted in a lesser aggregate term. The appellant argued that the trial court's failure to follow this approach violated the sentencing-package doctrine and demonstrated judicial vindictiveness attributable to his successful appeal. *Id.* at ¶ 9.

{¶ 30} We rejected both arguments in *Rammel*. With regard to the sentencing-package doctrine, we reasoned in part: "The trial court did not use the sentencing-package doctrine or exceed the scope of remand. We concluded in *Rammel II* that changes in sentencing law rendered Rammel's original sentence void. Consequently we reversed the entire sentence and remanded for a new sentencing hearing. The trial court had to reconsider all of its sentencing decisions, including which sentences to require Rammel to serve consecutively." *Id.* at ¶ 16. The same can be said in Anderson's case. In light of our prior opinion vacating his sentences and remanding for resentencing, the trial court had to reconsider all of its sentencing decisions, including the term of imprisonment for the three aggravated robberies. The sentencing-package doctrine imposed no impediment.

{¶ 31} Finally, with regard to vindictive sentencing in *Rammel*, we reasoned:

> There is no basis for a presumption of vindictiveness in a case in which the defendant has agreed to a narrowly set range for sentencing and the total length of a defendant's sentence after resentencing for multiple offenses is shorter than the total length of the original sentence. Rammel's agreed 5-8 year sentencing range for multiple offenses solidified his

concern over the total length of his sentence, not the length of any individual sentence. Indeed even when the burglary charges were believed to allow maximum 5 year sentences, the only way for the trial court to impose more than the minimum of the 5-8 year range was for some combination of the sentences to be served consecutively. He chose to continue with the agreed range. Thus, in this case the vindictiveness presumption simply does not apply.

Moreover, "vindictiveness of a sentencing judge is the evil the [*Pearce* ] Court sought to prevent rather than simply enlarged sentences." [Citation omitted]. The *Pearce* Court wanted to prevent judges when resentencing a defendant who had successfully challenged his conviction from punishing the defendant with a heavier sentence. Imposing a shorter total sentence within an agreed-upon range of sentence is hardly a punishment. Here, the trial court followed Rammel's agreement and reduced the total length of his sentence by one year. Accordingly, the circumstances in this case do not indicate a need to guard against vindictiveness.

If the *Pearce* presumption does not apply, "the burden remains upon the defendant to prove actual vindictiveness." (Citation omitted.) *Smith*, 490 U.S. at 799, 109 S.Ct. 2201, 104 L.Ed.2d 865. Rammel does not attempt to show actual vindictiveness, and we do not see any evidence of it.

*Id.* at ¶ 21-23.

{¶ 32} *Rammel* is distinguishable from Anderson's case insofar as it involved a

plea deal that included an agreed sentencing range. It is analogous, however, in two important respects. First, just as the trial court on remand increased Anderson's sentence on three counts of aggravated robbery, the trial court on remand in *Rammel* increased the appellant's sentence when it changed a previously-concurrent sentence for one count of breaking-and-entering to a consecutive sentence. Second, in Anderson's case and in *Rammel*, the net effect following a remand for resentencing was that the defendant's aggregate sentence was *reduced*. Under these circumstances, we find no "reasonable likelihood" of actual vindictiveness on the part of the sentencing judge.[3] Accordingly, the fourth assignment of error is overruled.

{¶ 33} In his fifth assignment of error, Anderson contends the "mandatory" nature of the felony sentencing statutes in Revised Code Chapter 2929 constitutes cruel and unusual punishment as applied to him. He argues that the sentencing statutes compelled the trial court to impose "mandatory prison terms" without the ability to consider his age and various attendant circumstances of youth. In particular, he complains about mandatory three-year terms for firearms specifications, minimum sentences of at least

---

[3] In explaining its new sentence, the trial court stated: "First of all, in light of looking at the Second District Court of Appeals case which I'm going to follow, I believe a modification of the sentence is appropriate since some of them will be going back to Juvenile Court." (Resentencing Tr. at 14). The trial court appears to have been referring to *State v. Brookshire*, 2d Dist. Montgomery No. 25859, 2014-Ohio-4858. In *Brookshire*, which was decided shortly before Anderson's resentencing, this court addressed a situation involving multiple charges against a juvenile, some of which were subject to mandatory bindover and some of which were not. This court concluded that the proper procedure in such a case, after conviction, was for the adult court to impose an adult sentence on the non-mandatory bindover counts but then stay the sentence and return those counts to juvenile court. *Id.* at ¶ 20-22. "At that point, the juvenile court can ultimately transfer the case back to the adult system or make a Serious Youthful Offender disposition along with a traditional juvenile disposition." *Id.* at ¶ 20. *Brookshire* has been accepted for review by the Ohio Supreme Court in case # 2015-0192 as being in conflict with *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850 (8th Dist.).

three years for first-degree felonies, and mandatory consecutive sentencing. He reasons that the felony sentencing statutes foreclosed an "individualized determination" regarding an appropriate sentence for him. Anderson raises his argument under the Eighth Amendment to the U.S. Constitution and Article I, Section 9 of the Ohio Constitution.

{¶ 34} Upon review, we find Anderson's argument to be unpersuasive. In support of his cruel-and-unusual punishment claim, he analogizes his case to precedent including *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2 825 (2010), and *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). But Anderson's reliance on these cases and other similar cases is misplaced. They bear no similarity to his situation.

{¶ 35} In *Miller*, the U.S. Supreme Court invalidated mandatory sentencing schemes that require juveniles convicted of homicide to "receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes[.]" *Miller* at 2475. In *Graham*, the Court held that the Eighth Amendment prohibits sentences of life without parole for juvenile offenders who commit non-homicide offenses. *Graham* at 82. In *Roper*, the Court held that the Eighth Amendment prohibits execution of individuals who were juveniles when they committed their crimes. *Roper* at 578.

{¶ 36} In the present case, of course, Anderson was not convicted of homicide. Nor did he receive a death sentence or a sentence of life without parole. Therefore, the foregoing cases are not applicable to him. We note that the only "mandatory" aspect of Anderson's individual sentences was a three-year prison term for the newly merged firearm specifications and, it appears, a minimum three-year prison term on the

substantive counts. By law, the three-year term for the firearm specification was mandatory and was required to be served consecutively. *See* R.C. 2929.14(B)(1)(a)(ii) and (C)(1)(a). Anderson's aggravated robbery and kidnapping convictions were first-degree felonies. The minimum term of imprisonment for those felonies was three years, and that term appears to have been mandatory because a firearm was involved, making Anderson ineligible for community control.[4] *See State v. Becraft*, 2d Dist. Clark No. 2013-CA-54, 2015-Ohio-3911, ¶ 14 (noting that imprisonment is required for aggravated robbery and other felonies when a firearm is involved or when a firearm specification is charged and proven). But consecutive sentencing was not mandatory for these substantive counts. In fact, the trial court on resentencing imposed three concurrent sentences for aggravated robbery. It imposed a discretionary consecutive sentence only for kidnapping.

**{¶ 37}** Even accepting, arguendo, that Ohio law compelled the trial court to impose punishment of at least three years in prison for Anderson's substantive first-degree felony counts and a consecutive three-year term for the merged firearm specifications, we see no violation of the Eighth Amendment to the U.S. Constitution or Article I, Section 9 of the Ohio Constitution. Contrary to the implication of Anderson's appellate brief, not all "mandatory" punishment imposed on juveniles in adult court is cruel and unusual. In *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, for example, the Ohio Supreme Court considered whether Ohio's felony sentencing scheme constituted cruel and unusual punishment as applied to a juvenile convicted of aggravated murder in adult

---

[4] The PSI reflects, however, that there was merely a statutory "presumption" under R.C. 2929.13(D) that a prison term was necessary for the aggravated robbery and kidnapping charges. (PSI at 11).

court and sentenced to life without parole. In *Long*, the defendant faced a mandatory minimum sentence of life with parole eligibility after twenty years. *Long* at ¶ 5. In the course of its ruling, the Ohio Supreme Court recognized that *Miller* banned *mandatory life-without-parole* sentences on juveniles tried in adult court. *Id.* at ¶ 8. Nowhere in *Long*, however, did the court suggest that that the Eighth Amendment or Article I, Section 9 prohibit *any and all* mandatory sentences on juveniles tried in adult court. *See also State v. Reidenbach*, 5th Dist. Coshocton No. 2014CA0019, 2015-Ohio-2915 (rejecting argument by juvenile tried in adult court that imposition of punitive and mandatory Tier III sex-offender requirements on him constituted cruel and unusual punishment).

{¶ 38} The only authority Anderson cites directly supporting the proposition that all mandatory minimum sentences imposed on juveniles tried in adult court constitute cruel and unusual punishment is *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014). In *Lyle*, the defendant was tried in adult court for a robbery he committed as a juvenile. The sentencing statute in adult court required a prison term of at least seven years. The defendant argued that application of the statute constituted cruel and unusual punishment "when applied to all juveniles prosecuted as adults because the mandatory sentence failed to permit the court to consider any circumstances based on his attributes of youth or the circumstances of his conduct in mitigation of punishment." *Id.* at 380. In a 4-3 decision, the Iowa Supreme Court agreed, concluding that "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." *Id.* at 400.

{¶ 39} Upon review, we decline to adopt the majority approach in *Lyle*. Notably, the Iowa Supreme Court conceded that "no other court in the nation has held that its

constitution or the Federal Constitution prohibits a statutory schema that prescribes a mandatory minimum sentence for a juvenile offender." *Id.* at 386. Although such consensus against Anderson's position is not dispositive, it cannot lightly be ignored either. The *Lyle* also court acknowledged that "most states permit or require some or all juvenile offenders to be given mandatory minimum sentences." *Id.* Ohio is among them because nothing in the Revised Code precluded the trial court from imposing a mandatory prison sentence on Anderson once he was bound over to adult court and subjected to Ohio's felony sentencing scheme.

{¶ 40} Having examined Eighth Amendment jurisprudence, as well as Article I, Section 9 of the Ohio Constitution, we are persuaded by the three dissenters in *Lyle* who found no support, in any other case in the nation, for the proposition that any mandatory minimum sentence imposed on a juvenile offender in adult court constitutes cruel and unusual punishment. In the present case, Anderson received three concurrent 11-year prison terms for aggravated robbery, a consecutive five-year term for kidnapping, and a consecutive three-year term for merged firearm specifications. For Eighth Amendment purposes, he appears to propose a categorical restriction prohibiting mandatory prison sentences on juveniles convicted in adult court. As set forth above, however, the only similar categorical prohibitions that have been established outside of Iowa involve sentencing juveniles to mandatory life without parole (*Miller*, *supra*), to life without parole for non-homicide offenses (*Graham*, *supra*), or to death for offenses committed as juveniles (*Roper*, *supra*). We agree with the *Lyle* dissenters that this line of cases cannot reasonably be extended to prohibit any and all mandatory sentences for juveniles tried in adult court.

{¶ 41} Finally, we find no violation of Article I, Section 9 in Anderson's case. Under the Ohio Constitution, cruel and unusual punishments are "rare" and are limited to sanctions that under the circumstances would be shocking to any reasonable person. *State v. Blankenship*, __ N.E.3d __, 2015-Ohio-4624, ¶ 32. We find nothing conscience-shocking about subjecting a juvenile tried in adult court to a mandatory consecutive three-year prison term when a firearm is used in the commission of his offense. Nor do we find anything conscience-shocking about such a defendant being subjected to a minimum three-year prison term when he commits a first-degree felony such as aggravated robbery or kidnapping. Accordingly, the fifth assignment of error is overruled.

{¶ 42} In his sixth and seventh assignments of error, Anderson asserts that the mandatory-transfer provisions of R.C. 2152.10(A)(2)(b) and R.C. 2152.12(A)(1)(b), which involve the transfer of juvenile cases to adult court, violate his right to due process and equal protection.

{¶ 43} In Anderson's prior appeal, we addressed and rejected precisely the same assignments of error challenging the mandatory-transfer provisions of R.C. 2152.10(A)(2)(b) and R.C. 2152.12(A)(1)(b) on the basis that they violate due process and equal protection. *Anderson* at ¶ 62-76. Anderson insists, however, that his present appeal raises one or more *new arguments* in support of these assignments of error. He also contends we have the discretion to ignore the res judicata effect of our prior opinion.[5]

{¶ 44} Upon review, we find res judicata applicable. The doctrine bars re-litigation

---

[5] In a footnote, however, Anderson explains that he is presenting his sixth and seventh assignments of error to preserve them for further appeal. (Appellant's Reply Brief at 9, fn.1).

of matters that either were raised in a prior appeal or could have been raised in a prior appeal. *State v. McCoy*, 2d Dist. Greene No. 04CA112, 2005-Ohio-6837, ¶ 15.   0Even if Anderson's sixth and seventh assignments of error address one or more new arguments that he did not raise previously, he *could have* raised them in his earlier appeal, which presented the same assignments of error. As for Anderson's assertion that we may disregard res judicata in an appropriate case, we see no reason to do so here. This court consistently has rejected due process and equal protection challenges to the mandatory-transfer provisions in R.C. 2152.10 and R.C. 2152.12. *See State v. Sowers*, 2d Dist. Miami No. 2014-CA-25, 2015-Ohio-2788, ¶ 4 (citing cases). We see no reason to disregard res judicata here in light of that precedent. The sixth and seventh assignments of error are overruled.

**{¶ 45}** Having overruled all assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Stephen A. Goldmeier
Charlyn Bohland
Hon. Barbara P. Gorman