[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Anderson,* Slip Opinion No. 2017-Ohio-5656.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-5656

THE STATE OF OHIO, APPELLEE, *v.* ANDERSON, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Anderson,* Slip Opinion No. 2017-Ohio-5656.]

*Criminal law—Sentencing—Trial tax—Eighth Amendment—Appellant failed to show that trial court imposed his sentence as penalty for exercising his right to jury trial instead of pleading guilty—Imposing mandatory minimum prison sentence of three years on juvenile offenders for aggravated robbery and for kidnapping does not violate Eighth Amendment's prohibition against cruel and unusual punishment—Mandatory three-year prison sentence imposed on a juvenile offender tried as an adult for a conviction of a firearm specification does not violate Eighth Amendment—Court of appeals' judgment affirming sentence affirmed.*

(No. 2016-0317—Submitted February 28, 2017—Decided July 5, 2017.)

APPEAL from the Court of Appeals for Montgomery County,
No. 26525, 2016-Ohio-135.

_____

**SYLLABUS OF THE COURT**

1.  Where one defendant pleads guilty to three felonies, agrees to testify against a codefendant, and receives a sentence of nine years, and the codefendant is convicted by a jury of four felonies and is sentenced to 19 years, and when the trial court specifically states that the sentence is not being imposed as a penalty for going to trial, no inference of impropriety arises if the sentence is within the range of penalties provided by law.

2.  Imposing a mandatory minimum sentence of three years on juvenile offenders for aggravated robbery and for kidnapping does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

3.  A mandatory three year prison sentence imposed on a juvenile offender tried as an adult for a conviction of a firearm specification does not violate the Eighth Amendment because it serves a legitimate penological goal, is proportional to the crimes committed, and is not one of the harshest possible penalties for a juvenile offender.

_____

**O'DONNELL, J.**

{¶ 1} Rickym Anderson appeals from a judgment of the Second District Court of Appeals affirming the 19 year prison sentence imposed on him at resentencing for his involvement in the robberies of Brian Williams, Tiesha Preston, and Star MacGowan and the kidnapping of Preston.

{¶ 2} Anderson failed to show that the trial court imposed the sentence as a penalty for exercising his right to a jury trial instead of pleading guilty. It is true that Anderson's codefendant, Dylan Boyd, received a nine year sentence, but he pled guilty to three felonies and agreed to testify against Anderson; by way of contrast, a jury found Anderson guilty of four felonies, the court specifically stated the 19 year sentence was not a penalty for going to trial, and the sentence imposed was within the range of punishment authorized by law.

{¶ 3} Neither does the sentence violate the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment because it does not involve the imposition of the harshest possible penalties for juveniles, it is proportionate to the offenses committed by Anderson, and there is no national consensus against imposing mandatory sentences on juveniles tried as adults.

{¶ 4} Anderson also contends that the mandatory sentencing scheme set forth in R.C. Chapter 2929 violates due process as applied to children, but because he failed to raise this argument in the lower courts it is forfeited and he cannot raise it for the first time in his appeal to this court.

{¶ 5} We therefore affirm the judgment of the appellate court.

**Facts and Procedural History**

{¶ 6} On April 20, 2012, 16 year old Rickym Anderson, Dylan Boyd, and M.H. noticed Brian Williams and Tiesha Preston standing inside a garage at 615 Yale Avenue in Dayton, Ohio. Boyd, along with Anderson and M.H., entered the garage, pointed a gun at Williams and Preston, and yelled, "Don't move." However, they both tried to run at that point, but Boyd shot Williams, grabbed Preston, and forced her into the trunk of a car parked outside the garage. After stealing a purse and cigarettes from inside that vehicle, they left.

{¶ 7} That same day, Anderson and Boyd approached Star MacGowan who was standing outside her apartment in Dayton. Anderson showed MacGowan a handgun, told her, "I'm gonna pop you," and demanded money from her. MacGowan handed over her purse, and he and Boyd took her cell phone, left the purse, and ran. Subsequently, a Dayton police officer apprehended Anderson near MacGowan's apartment. The officer recovered MacGowan's cell phone from a search of Anderson's person, and located a firearm 30 to 40 feet away.

{¶ 8} On July 5, 2012, the state of Ohio filed a complaint against Anderson in the juvenile court alleging offenses that, if committed by an adult, would

constitute aggravated robbery, kidnapping, and felonious assault—all with firearm specifications. The juvenile court found probable cause to believe that Anderson had committed the offenses and transferred the case to the General Division of the Montgomery County Court of Common Pleas for criminal prosecution.

{¶ 9} A Montgomery County Grand Jury returned indictments against Anderson and Boyd charging them each with three counts of aggravated robbery, one count of felonious assault, and one count of kidnapping—all with firearm specifications.

{¶ 10} Boyd negotiated a plea with the state and agreed to testify against Anderson, if necessary, in exchange for the state agreeing to recommend imposition of a nine year sentence. The court accepted the plea, and as a result, Boyd pleaded guilty to one count of aggravated robbery, with a firearm specification, one count of felonious assault, and one count of kidnapping, and the trial court sentenced him to a total of nine years.

{¶ 11} Anderson, however, exercised his right to a jury trial and was found not guilty of felonious assault, but guilty of three counts of aggravated robbery, and the firearm specifications attached to those felonies, and one count of kidnapping, with a firearm specification. At sentencing, the court imposed an aggregate prison term of 28 years.

{¶ 12} Anderson appealed his convictions and sentence, and the Second District Court of Appeals affirmed in part, reversed in part, and remanded the matter for resentencing, concluding the trial court did not make the necessary findings to impose consecutive sentences and instructing that it needed to reexamine the jail time credit Anderson received. *State v. Anderson*, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, ¶ 6.

{¶ 13} At resentencing, the trial court imposed an aggregate term of 19 years in prison, sentencing Anderson to 11 years for each of the aggravated robbery counts and ordering those sentences to be served concurrently. The trial court also

4

imposed a mandatory three year term on the firearm specification and five years for kidnapping and ordered those sentences to run consecutively to the 11 year term.

{¶ 14} The trial court, in discussing the disparity between Anderson's and Boyd's sentences, stated they were "equally culpable" but that Boyd received a nine year sentence because he reached an agreement with the state, admitted to his misconduct, and agreed to testify against Anderson if required. Regarding Anderson's sentence, the trial court stated, "It's not a penalty. In fact, people go to trial and get on community control. That has nothing to do with it." The trial court also noted Anderson's criminal history and commented that he did not take responsibility for what he had done.

{¶ 15} The Second District Court of Appeals affirmed the resentencing and held the trial court adequately dispelled any inference Anderson was punished for exercising his right to a jury trial and noted that Boyd had received a reward for pleading guilty and agreeing to testify against Anderson while "Anderson stood on his rights, went to trial, and received no such reward." 2016-Ohio-135, ¶ 11. The appellate court also concluded mandatory minimum sentences imposed on a juvenile offender in adult court do not constitute cruel and usual punishment. *Id.* at ¶ 40. The court further cited *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), establishing categorical prohibitions against sentencing juveniles to mandatory life without parole, to a life sentence without parole for non-homicide offenses, or to death for offenses committed as juveniles, but concluded that none of these cases can reasonably be extended to prohibit mandatory sentencing for juvenile offenders tried in adult court. 2016-Ohio-135 at ¶ 40.

{¶ 16} Anderson appealed to this court, and we accepted the following two propositions of law:

When one codefendant who proceeds to trial receives a sentence twice as long as a codefendant who enters a plea, an appellate court cannot dispel the possibility of an impermissible trial tax merely by referring to the disparity as a reward to the codefendant for entering a plea.

The mandatory sentencing statutes in R.C. 2929 are unconstitutional as applied to children because they do not permit the trial court to make an individualized determination about a child's sentence or the attributes of youth.

**Positions of the Parties**

{¶ 17} Anderson maintains a marked difference between the sentences for two equally culpable codefendants, where one codefendant pleads guilty and the other goes to trial, gives rise to trial tax concerns, and if no other evidence on the record justifies the disparity between sentences, the disparity should be construed as a trial tax and the impermissibly enhanced sentence should be reversed. He further argues his sentence should be reversed because neither the appellate court nor the trial court listed any permissible reasons for the disparity in Anderson's and Boyd's sentences. Additionally, Anderson contends his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because the trial court was not permitted to make an individualized determination about Anderson and depart from mandatory minimums because Ohio law requires certain sentences for firearm specifications, at least a three year sentence for first degree felonies, and that certain sentences must be served consecutively to others. He also argues due process demands that adult courts should be given discretion to sentence according to the juvenile or adult codes. Anderson asserts this argument is couched in Eighth Amendment jurisprudence and has always been raised this way.

6

**{¶ 18}** The state maintains Anderson failed to establish his sentence is directly disproportionate to the sentence Boyd received because there is no requirement that codefendants receive the same sentence, particularly where one codefendant goes to trial and the other receives a lesser sentence as a result of a negotiated plea agreement. It contends the trial court also made it clear Anderson's election to go to trial did not play a part in his sentence and was not a penalty. Further, the state argues Boyd negotiated a plea agreement, waived his constitutional rights, admitted his involvement, and agreed to testify at Anderson's trial to obtain a reduced sentence, whereas Anderson did not negotiate with the state for a lesser offense. Regarding Anderson's argument that mandatory minimum sentencing is unconstitutional as applied to juveniles, the state asserts Ohio's sentencing scheme provides an opportunity for the trial court to consider the child's age and mitigating factors of youth. It also maintains a mandatory three year firearm specification does not constitute cruel and unusual punishment because it bears no similarity to a mandatory minimum sentence of life without parole or death, it is supported by a national consensus, and it withstands " '[t]he judicial exercise of independent judgment,' " state's brief at 29, quoting Graham, 560 U.S. at 67-68, 130 S.Ct. 2011, 176 L.Ed.2d 825. Finally, the state argues that we should decline to rule on whether sentencing a juvenile to a mandatory minimum adult felony violates due process because Anderson is raising this argument for the first time on appeal to this court.

## Issues on Appeal

**{¶ 19}** This case presents two separate questions of law: first, whether imposing a longer prison term on a defendant who exercised his right to a jury trial than on a codefendant who pleaded guilty and agreed to testify against the defendant is an unconstitutional trial tax, and second, whether mandatory sentencing, as applied to juveniles, constitutes cruel and unusual punishment.

**Law and Analysis**

*Sentencing Disparities between Codefendants*

**{¶ 20}** "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement * * *." *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989). A state may, however, "encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v. New Jersey*, 439 U.S. 212, 219, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). "The standard of punishment is necessarily different for those who plead and for those who go to trial. For those who plead, that fact itself is a consideration in sentencing, a consideration that is not present when one is found guilty by a jury." *Id.* at 224, fn. 14.

*a. Federal Jurisdictions*

**{¶ 21}** Several federal circuit courts of appeal have held that a sentencing difference between codefendants raises no presumption of a penalty for standing trial. *United States v. Sanchez Solis*, 882 F.2d 693, 699 (2d Cir.1989) (rejecting defendant's argument that he was "penalized for exercising his right to a trial" because of a "disparity in sentences" between the defendant and his codefendants); *United States v. Chase*, 838 F.2d 743, 751 (5th Cir.1988) ("However, a codefendant's sentence is immaterial to the propriety of a sentence imposed on a defendant"); *United States v. Frost*, 914 F.2d 756, 774 (6th Cir.1990) ("Mere disparity in sentences is insufficient to show that the sentencing court penalized Frost and Griffin for going to trial"); *United States v. Guerrero*, 894 F.2d 261, 267 (7th Cir.1990) ("A mere showing of disparity in sentences among codefendants did not, alone, demonstrate any abuse of discretion"); *United States v. Granados*, 962 F.2d 767, 774 (8th Cir.1992) ("A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own; a sentence is not disproportionate just because it exceeds a co-defendant's sentence"); *United States v. Whitecotton*, 142 F.3d 1194, 1200 (9th Cir.1998) ("Disparity in sentences between codefendants is not

sufficient ground to attack a proper guidelines sentence"); *United States v. Jackson*, 950 F.2d 633, 637-638 (10th Cir.1991) (rejecting claim of disparate sentences "based solely on the lesser sentence imposed on [a] codefendant").

### b. State Court Jurisdictions

{¶ 22} Two state supreme courts have reached conclusions in accord with the federal judiciary. *See State v. Gregory*, 340 N.C. 365, 424, 459 S.E.2d 638 (1995) ("Disparity in the sentences imposed upon codefendants does not result in cruel and unusual punishment and is not unconstitutional"); *People v. Caballero*, 179 Ill.2d 205, 217, 688 N.E.2d 658 (1997) ("A sentence imposed on a codefendant who pleaded guilty as part of a plea agreement does not provide a valid basis of comparison to a sentence entered after a trial").

{¶ 23} Here, a petit jury found Anderson guilty of four felonies and the trial court sentenced him to a term of 28 years which, upon remand, it reduced to an aggregate term of 19 years, including mandatory incarceration for aggravated first degree felonies and a mandatory three year penalty for the gun specification. The trial court also specifically stated at Anderson's resentencing hearing that the sentence imposed is "not a penalty."

{¶ 24} This record highlights significant factual differences between these codefendants: Boyd pled to three felony offenses, cooperated with the state, and agreed to testify against Anderson, and the state agreed to recommend a nine year sentence to the court. By contrast, Anderson was found guilty by a jury of four felonies, with firearm specifications, and urges his sentence constitutes a trial tax because it is disproportionate to the Boyd sentence. It is not a trial tax. Rather, the trial court specifically stated that it did not punish Anderson for exercising his right to a jury trial, and here a comparison with the sentence of the codefendant is invalid because of the factual differences in their respective cases.

{¶ 25} Thus, where one defendant pleads guilty to three felonies, agrees to testify against a codefendant, and receives a sentence of nine years, and the

codefendant is convicted by a jury of four felonies and is sentenced to 19 years, and when the trial court specifically states that the sentence is not being imposed as a penalty for going to trial, no inference of impropriety arises if the sentence is within the range of penalties provided by law.

*Mandatory Sentencing*

**{¶ 26}** Anderson urges that mandatory sentencing with respect to juveniles constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution because it mandates trial courts treat children as if they were adults. The state responds that imposing a mandatory minimum sentence or a mandatory consecutive prison term for a firearm specification on a juvenile being tried as an adult does not prevent courts from making an individualized determination of the appropriate sentence, nor does it make the sentence cruel and unusual. The statutory penalty for those convicted of first degree felonies is a term of three to eleven years. R.C. 2929.14(A)(1). And R.C. 2929.14(B)(1)(a)(ii) and (C)(1)(a) specify a mandatory three year term served consecutively with, and prior to, any prison term for an underlying felony if the offender is convicted of a firearm specification.

*a. Cruel and Unusual Punishment*

**{¶ 27}** The Eighth Amendment to the United States Constitution precludes cruel and unusual punishment. "A key component of the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " (Brackets sic.) *State v. Moore*, ___ Ohio St.3d ___, 2016-Ohio-8288, ___ N.E.3d ___ ¶ 31, quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). To constitute cruel and unusual punishment, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964).

{¶ 28} In *Graham*, the United States Supreme Court stated that in adopting categorical rules to define Eighth Amendment standards, the court first considers "whether there is a national consensus against the sentencing practice at issue," and second, it determines "in the exercise of its own independent judgment whether the punishment in question violates the Constitution." 560 U.S. at 61, 130 S.Ct. 2011, 176 L.Ed.2d 825.

*i. National Consensus*

{¶ 29} In determining whether a national consensus exists against mandatory sentencing for juvenile offenders, " '[t]he "clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures," ' " *id.* at 62, quoting *Atkins v. Virginia*, 536 U.S. 304, 312, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), quoting *Penry v. Lynaugh*, 492 U.S. 302, 331, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Although this factor "is not itself determinative of whether a punishment is cruel and unusual," it is " 'entitled to great weight.' " *Id.* at 67, quoting *Kennedy v. Louisiana*, 554 U.S. 407, 434, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008).

{¶ 30} In this case, Anderson concedes there is no national consensus against mandatory sentencing for juveniles, and indeed, "most states permit or require some or all juvenile offenders to be given mandatory minimum sentences." *State v. Lyle*, 854 N.W.2d 378, 386 (Iowa 2014). We agree there is no evidence of a national consensus against the imposition of mandatory sentences on juvenile offenders tried as adults.

*ii. Independent Review*

{¶ 31} "The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." *Graham*, 560 U.S. at 67, 130 S.Ct. 2011, 176 L.Ed.2d 825. Also relevant is "whether the challenged sentencing practice serves legitimate penological goals." *Id.*

{¶ 32} In *Roper*, where the trial court imposed the death penalty on Christopher Simmons, who was 17 years old when he murdered Shirley Crook, the United States Supreme Court concluded that "the Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. 543 U.S. at 578, 125 S.Ct. 1183, 161 L.Ed.2d 1.

{¶ 33} In *Graham*, where the trial court sentenced Terrance Graham to life in prison with no possibility of release for an armed burglary that he committed at age 16, the court held that "the Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide" and stated that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Graham* at 82.

{¶ 34} And in *Miller*, where "two 14-year-old offenders * * * were convicted of murder and sentenced to life imprisonment without the possibility of parole," the court concluded that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " 567 U.S. at 465, 132 S.Ct. 2455, 183 L.Ed.2d 407.

{¶ 35} The court further noted that "*Graham*, *Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the *harshest possible penalty* for juveniles." (Emphasis added.) *Id.* at 489.

{¶ 36} Anderson's argument that his sentence is unconstitutional because the trial court was not permitted to make an individualized determination when sentencing him is not well taken. Anderson, Boyd, and M.H. robbed Williams and Preston at gunpoint, and after shooting Williams, kidnapped Preston by forcing her into the trunk of a car. Then Anderson and Boyd approached MacGowan, took her

purse at gunpoint, and stole her cell phone. After being convicted of three counts of aggravated robbery and one count of kidnapping with gun specifications, Anderson, who faced a potential maximum sentence of 50 years, was resentenced to an aggregate term of 19 years.

{¶ 37} This case is more analogous to *State v. Taylor G.*, 315 Conn. 734, 744, 110 A.3d 338 (2015), where the Supreme Court of Connecticut rejected Taylor G.'s argument that his ten and five year mandatory minimum sentences for first degree sexual assault and risk of injury to a child, as applied to juveniles, violated the Eighth Amendment's prohibition against cruel and unusual punishment. The court concluded:

> The defendant's sentences not only were far less severe than the sentences at issue in *Roper*, *Graham* and *Miller*, but were consistent with the principle of proportionality at the heart of the eighth amendment protection because the mandatory minimum requirements, while limiting the trial court's discretion to some degree, still left the court with broad discretion to fashion an appropriate sentence that accounted for the defendant's youth and immaturity when he committed the crimes.

*Id.*

{¶ 38} Here, R.C. 2929.14(A)(1) requires that a trial court impose a mandatory minimum sentence of three years for first degree aggravated robbery and kidnapping convictions, which is far less severe than the sentences imposed in *Roper*, *Graham*, and *Miller*, and also does not violate the principle of proportionality at the heart of the Eighth Amendment because the mandatory minimum requirements leave the trial court with discretion to choose "from a wide

range of sentencing possibilities that equaled or exceeded the minimum term of imprisonment." *Taylor G.* at 746.

{¶ 39} Accordingly, imposing a mandatory minimum sentence of three years on juvenile offenders for aggravated robbery and for kidnapping does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

{¶ 40} Here, although the court sentenced Anderson to 11 years for each aggravated robbery conviction, these were imposed concurrently, but consecutive to a five year sentence for the kidnapping conviction, and the court imposed a consecutive three year firearm penalty as well.

{¶ 41} Regarding the firearm specification, we have held in *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.2d 939, ¶ 31, "The purpose of a firearm specification is to enhance the punishment of criminals who voluntarily introduce a firearm while committing an offense and to deter criminals from using firearms."

{¶ 42} Courts of other jurisdictions have upheld longer mandatory sentences than the three year firearm specification at issue in this case. *See State v. Brown*, 300 Kan. 542, 564, 331 P.3d 781 (2014) ("A hard 20 life sentence does not irrevocably adjudge a juvenile offender unfit for society. Rather, in line with the concerns expressed in *Graham*, it gives the offender a " 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' " by permitting parole after the mandatory 20-year minimum prison term is served), quoting *Graham*, 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825; *Ouk v. Minnesota*, 847 N.W.2d 698, 701 (Minn.2014) ("a mandatory sentence of life imprisonment with the possibility of release after 30 years is not encompassed within the rule in *Miller* * * * because it does not require the imposition of the harshest term of imprisonment: life without the possibility of release"); *Commonwealth v. Okoro*, 471 Mass. 51, 59, 26 N.E.3d 1092 (2015) ("we do not read *Miller* as a whole to indicate that the proportionality principle at the core of the Eighth Amendment

would bar a mandatory sentence of life with parole eligibility after fifteen years for a juvenile convicted of murder in the second degree").

{¶ 43} We conclude, therefore, that a mandatory three year prison sentence imposed on a juvenile offender tried as an adult for a conviction of a firearm specification does not violate the Eighth Amendment because it serves a legitimate penological goal, is proportional to the crimes committed, and is not one of the harshest possible penalties for a juvenile offender.

### b. Due Process

{¶ 44} Because Anderson has failed to raise the issue of whether sentencing a juvenile bound over for trial as an adult to a mandatory sentence violates due process in the appellate court or the trial court, he has forfeited his right to present it for the first time in this court. Accordingly, we decline to address it in this appeal. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15.

### Conclusion

{¶ 45} A disparity existing between sentences imposed on codefendants is insufficient to establish a trial court imposed a longer sentence as a trial tax. Neither does Anderson's aggregate 19 year sentence constitute cruel and unusual punishment because there is no national consensus against mandatory sentencing for juveniles, the sentence is proportional to the crimes he committed, and it is not one of the harshest possible penalties for juvenile offenders tried as adults.

{¶ 46} Finally, Anderson has forfeited his right to argue that mandatory sentencing violates due process because he failed to raise that issue on direct appeal. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

KENNEDY, FISCHER, and DEWINE, JJ., concur.

FRENCH, J., concurs in judgment only.

O'CONNOR, C.J., concurs in part and dissents in part, with an opinion.

O'NEILL, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., concurring in part and dissenting in part.**

{¶ 47} I disagree with the court's judgment for the reasons that I articulated in my dissenting opinion in *State v. Aalim*, ___ Ohio St.3d ___, 2017-Ohio-2956, __ N.E.3d ___. Because I believe that the mandatory-transfer scheme codified in R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) is unconstitutional, I would conclude that appellant, Rickym Anderson, was bound over to adult court without due process. Therefore, in my view, the General Division of the Montgomery County Court of Common Pleas lacked jurisdiction to try Anderson, and his convictions and sentence were void ab initio. *See, e.g.*, *State v. Golphin*, 81 Ohio St.3d 543, 547, 692 N.E.2d 608 (1998). Accordingly, I would not reach the merits of Anderson's appeal. Instead, I would remand this case to the juvenile court with instructions to follow the procedure for discretionary transfer, including the investigation required by R.C. 2152.12(C) followed by an amenability hearing pursuant to R.C. 2152.12(B).

{¶ 48} Pursuant to the majority's holding in *Aalim*, however, the trial court did not lack jurisdiction to try Anderson. With respect to the merits of the "trial tax" issue that he raises, I concur with the majority that the court did not punish Anderson for exercising his right to stand trial. I write separately to discuss the underlying circumstances in greater detail in an effort to provide guidance to sentencing courts. As the complexity of the first syllabus paragraph of the majority opinion demonstrates, these inquiries are fact-specific and require a review of the specific statements made by the court at the sentencing hearing and the circumstances of the codefendants' convictions.

{¶ 49} In this case, I would find that clarifying statements made by the trial court at Anderson's resentencing—in addition to the court's statement that Anderson's sentence was not imposed as a penalty for going to trial and the fact that his sentence fell within the range of penalties provided by law—support the

conclusion that Anderson was not subjected to an impermissible trial tax. Although the trial court stated that "all three people involved in these [crimes] were equally culpable," it also thoroughly explained why Anderson was sentenced to a significantly longer prison term than his codefendant.

{¶ 50} First, the trial court noted that Anderson's codefendant "admitted what he did and * * * agreed to testify against [Anderson] if required." As the majority explains, the fact that the codefendant pled guilty and accepted responsibility for his role in the crimes is a reasonable consideration in sentencing. Majority opinion at ¶ 24. The trial court found that while Anderson's codefendant accepted responsibility and agreed to a prison sentence as part of his plea agreement, Anderson continued to deny culpability as late as the time of the presentence-investigation report, when he "reported he was with some people who decided to rob some people * * * [and] stated he personally did not comment [sic] any offense but was hanging around with people who did and that he was not under the control of himself as the drugs had taken over his mind."

{¶ 51} Second, the trial court emphasized that although Anderson did not brandish a weapon during each of the crimes, he was involved in all of them and never made an effort to leave but instead continued to participate in the offenses. And he did brandish a weapon during one of the later crimes.

{¶ 52} Third, the trial court described Anderson's prior offenses, which included theft, robbery, and disorderly-conduct adjudications, probation violations, and a corrections commitment.

{¶ 53} The trial court cited the above facts in explaining its findings that Anderson was not amenable to treatment and that a 19-year prison sentence was justified, emphasizing in particular the fact that Anderson failed to take responsibility even after being convicted and admitting that he was present at the commission of each crime.

{¶ 54} In addition to the trial court's unequivocal statement that the sentence was "not a penalty" imposed on Anderson for failing to plead guilty and the facts that Anderson was found guilty of four felonies and his codefendant pled guilty only to three, the trial court's detailed rationale for imposing a 19-year sentence is sufficient to defeat Anderson's claim that his sentence was based on an impermissible trial tax. The record reflects that the trial court considered Anderson's numerous prior offenses and prior failures to abide by court orders, the nature and circumstances of the offenses that he committed in this case, and his refusal to accept responsibility for his criminal conduct.

{¶ 55} This is not to suggest that such a detailed explanation is required at every sentencing. However, in the circumstances here, the trial judge's explanation has provided this court a sufficient record upon which to conclude that there was no sentencing error.

_____

**O'NEILL, J., dissenting.**

{¶ 56} Respectfully, I must dissent.

{¶ 57} In light of the specific facts of this record, I agree that appellant, Rickym Anderson, did not incur a "trial tax" for exercising his right to stand trial. It appears instead that his codefendant benefitted from a plea deal in which the state agreed to recommend a nine-year prison sentence. At Anderson's first sentencing hearing, the court made no reference to his decision to stand trial and explained that Anderson's prior offenses justified the severe adult sentence imposed. And at resentencing, the court explained on the record that it was not imposing a trial tax on Anderson.

{¶ 58} I do not believe that the imposition of different sentences on codefendants alone can raise the inference of a trial tax. Even if that were the standard, the trial court explained unequivocally that Anderson was not being

18

punished severely for invoking his right to stand trial but, rather, because he committed crimes for which he deserved to be treated severely.

{¶ 59} Nonetheless, I cannot join the majority. I agree with the chief justice that the court of appeals' judgment should be reversed and the matter remanded to the juvenile court because Anderson was transferred to adult court under the unconstitutional mandatory-transfer statutes. I would reverse and remand pursuant to the logic of *State v. Aalim*, ___ Ohio St.3d ___, 2016-Ohio-8278, ___ N.E.3d ___, *reconsidered and vacated*, __ Ohio St.3d __, 2017-Ohio-2956, __ N.E.3d __.

{¶ 60} Moreover, I cannot agree with the majority's decision not to determine whether a mandatory sentence comports with the due-process protections owed to juvenile offenders simply because Anderson challenged his mandatory sentence only under the Eighth Amendment to the United States Constitution. This is a legally invalid distinction, because the prohibition against cruel and unusual punishments in the Eighth Amendment is *inherently a due-process protection* that applies against Ohio through incorporation in the Fourteenth Amendment's Due Process Clause. *Roper v. Simmons*, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *see also Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 91 L.Ed. 422 (1947) (plurality opinion) ("The Fourteenth [Amendment] would prohibit by its due process clause execution by a state in a cruel manner"). The Eighth Amendment itself does not apply to the states, but its protections are inherent in the procedures owed by the states to the people under the Fourteenth Amendment. For that reason it is odd to say that Anderson challenged his mandatory sentence under the Eighth Amendment but forfeited the issue under the Due Process Clause.

{¶ 61} Nonetheless, the majority relies again today on the principle that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or

corrected by the trial court,' " *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. *See* majority opinion at ¶ 44, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15. In rejecting the chance to consider the due-process issue, the majority opinion says nothing about the countervailing principle that "this court has discretion to consider a forfeited constitutional challenge to a statute" and "review the trial court decision for plain error," *Quarterman* at ¶ 16. If this court is going to exercise its discretion to avoid considering an important constitutional issue under the plain-error standard, I think that it should say so and explain why.

{¶ 62} For at least the past 100 years, the lodestar of juvenile justice has been individualized assessment. *See In re Gault*, 387 U.S. 1, 14-15, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ("From the juvenile court statute adopted in Illinois in 1899, the system has spread to every State in the Union, the District of Columbia, and Puerto Rico. * * * The early reformers * * * believed that society's role was not to ascertain whether the child was 'guilty' or 'innocent,' but 'What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career' "); *Miller v. Alabama*, 567 U.S. 460, 478-479, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 77-78; *Aalim*, __ Ohio St.3d __, 2016-Ohio-8278, __ N.E.3d __, at ¶ 18-19.

{¶ 63} Children have the due-process right to be evaluated prior to the imposition of punishment by a judge who has paid special attention to their particular circumstances. *C.P.* at ¶ 77-78. I do not believe that this right ceases to exist when a juvenile court sends a child upstairs to adult court for adult proceedings. The defendant is still a juvenile, without regard to what forum he finds himself in. Not every child who displays, brandishes, indicates possession of, or uses a firearm to commit an offense deserves exactly the mandatory three

additional years of imprisonment required by R.C. 2929.14(B)(1)(a)(ii). Judges are elected in their communities to impose punishment in each case that comes before them. The mandatory sentencing scheme, when applied to those who committed their crimes while juveniles, thwarts the right to individualized assessment by imposing a one-size-fits-all punishment.

{¶ 64} For the foregoing reasons, I dissent.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Meagan D. Woodall and Heather N. Jans, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Stephen A. Goldmeier and Charlyn Bohland, Assistant Public Defenders, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Stephen P. Carney, Deputy Solicitor, and Aaron S. Farmer, Assistant Attorney General, urging affirmance on behalf of amicus curiae Ohio Attorney General Michael DeWine.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, urging affirmance on behalf of amicus curiae Franklin County Prosecuting Attorney Ron O'Brien.

_____