[Cite as *Huber v. Ohio Dept. of Job & Family Servs.*, 2025-Ohio-987.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JOHN HUBER | : | |
| | : | |
| Appellant | : | C.A. No. 30205 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 02279 |
| | : | |
| OHIO DEPT. OF JOB AND FAMILY SERVICES | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 21, 2025

. . . . . . . . . . .

JOHN HUBER, Appellant, Pro Se

ANGELA M. SULLIVAN, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Plaintiff-Appellant John Huber appeals from the denial of his Supplemental Nutrition Assistance Program ("SNAP") benefits by the Ohio Department of Job and Family Services ("ODJFS"), which was affirmed upon review by the trial court. Huber appears to contend that his assistance group's income should have been averaged due to fluctuations in self-employment income and expenses and that an insurance claim

payment from a car accident was wrongfully included in his assistance group's income determination, resulting in his income being inaccurately elevated. However, Huber did not previously raise these arguments, now raising them for the first time on appeal. Thus, he has waived his right to raise them. Even if he were not precluded from raising the arguments, any evidence of self-employment income offered by Huber was not included in the calculation of his assistance group's income, and he did not point to anything in the record demonstrating that the insurance payment affected his assistance group's income determination. Based on our review of the record, the trial court did not err in concluding that ODJFS had properly affirmed the denial of SNAP benefits to Huber's family, because, following his new marriage, Huber's three-person assistance group's income exceeded the income eligibility standard for SNAP benefits. We affirm the judgment of the trial court.

## I.    Background Facts and Procedural History

{¶ 2} Prior to February 2023, Huber and his minor child were part of a two-person assistance group ("AG") that received SNAP benefits (commonly known as "food stamps"). In December 2022, Huber submitted a change report to the Montgomery County Department of Job and Family Services ("MCDJFS"), reporting that he had gotten married and that his spouse was employed. MCDFJS then notified Huber that his recent marriage could affect his SNAP benefit eligibility; the agency requested additional information, including his wife's identification, birth certificate, and income documentation. Huber provided MCDJFS with one of his wife's paystubs from her employment in December 2022, which showed her gross bi-weekly income as $1,811, and evidence of

$944 received monthly by both him and his minor child in Retirement, Survivors, and Disability Insurance (RSDI) from the Social Security Administration. The new marriage resulted in an increase in the household's monthly income to $5,781 in non-exempt gross monthly income ([$1,811 x 2.15] + [$944 x 2] = $5,781). He also reported necessary utility expenses and shelter expenses of $32 monthly for property taxes.

{¶ 3} Based on Huber's AG's gross income of $5,781, a standard deduction of $193, an earned income deduction of $778, and $0 in excess shelter expenses ($32 property taxes + $646 standard utility deduction – 50% of adjusted gross income), MCDJFS determined that his AG was over the gross monthly income limit for categorical eligibility (i.e., it exceeded 130% of the federal poverty level monthly income standard of $2,495 for an AG size of three people). The AG's net adjusted monthly income of $4,810 also exceeded the net income standard of $1,920 for a three-person AG. For these reasons, MCDJFS determined that Huber's AG was over both the gross income limit for categorical eligibility and over the net income standard and thus, was ineligible for SNAP benefits. A termination of benefits notice was sent to Huber in February 2023, and he requested a State hearing.

{¶ 4} At the State hearing, Huber testified that he had stopped receiving RSDI when he remarried and was in the process of seeking his own disability determination. (The electronic verification obtained by MCDFJS, however, showed Huber was still eligible for $944 in RSDI per month effective January 1, 2023.) Huber also testified that, in addition to his spouse being employed, she was also self-employed as part of an S corporation, and he provided a spreadsheet from his bank account showing deposits and

debit card transactions without explanation. An MCDJFS representative testified that the AG's income calculation included credits for property taxes of $32 per month and a standard utility allowance of $646. The representative also testified that Huber's wife's paystub was the final paystub of 2022 and that her gross monthly income was illustrative of her annual year-to-date income of $45,752. The representative confirmed that Huber had submitted what appeared to be a bank statement to reflect self-employment income, but that it was not clear that the statement was meant to verify self-employment and, as such, the purported self-employment income had not been included in the AG's income determination.

{¶ 5} At the conclusion of the State hearing, Huber was offered the opportunity to supplement the record with additional documents regarding the nature of his wife's self-employment. He later sent an email stating that his and his wife's "trade or business" was construction work but that they planned to shift the focus of their business toward fostering children in the future. He claimed that the business was an S corporation but did not provide a business name, articles of incorporation, or any other information related to the business.

{¶ 6} The State hearing officer overruled Huber's SNAP appeal, finding that MCDJFS had not used any self-employment earnings in making its income determination and in terminating Huber's benefits and had correctly calculated the AG's income in accordance with the law. The officer explained that, regarding the reported self-employment income, the verification submitted to MCDJFS was insufficient to verify the income and expenses, and moreover, no self-employment income was even included in

the income calculation. Because the self-employment income had not been included in the calculation, it did not affect the AG's SNAP eligibility determination. The officer further pointed out that, even if Huber no longer received his RSDI income, the AG's total monthly gross income ($4,837) and monthly net income ($3,866) still exceeded the eligibility standards. Huber requested an administrative appeal to ODJFS.

{¶ 7} On appeal, ODJFS overruled Huber's appeal, finding that MCDJFS had appropriately calculated the AG's income in accordance with Ohio law and had properly denied Huber's SNAP benefits based on his AG's gross and net income ineligibility. ODJFS also reiterated that any self-employment income was not included in the AG's income calculation and therefore, did not affect the eligibility determination. Huber appealed the determination of his administrative appeal to the trial court.

{¶ 8} In affirming ODJFS's decision upholding MCDJFS's termination of Huber's benefits, the trial court considered both the gross income test and the net income test used by MCDJFS. The trial court confirmed that the gross income eligibility standard at 130% of the federal poverty level for a three-person AG was $2,495. Huber's AG consisted of him, his minor child, and his wife. MCDFJS determined that Huber's AG's gross monthly income was $5,781, which included his wife's earned monthly income of $3,893 (bi-weekly earnings of $1,811 multiplied by 2.15) and Huber and his son's unearned monthly RSDI of $1,888 ($944 each). This gross income of $5,781 was over the relevant gross income eligibility standard of $2,495. Moreover, even assuming that Huber was no longer receiving RSDI benefits in the amount of $944, his AG's gross income was $4,837, which still exceeded the gross income eligibility standard, rendering

Huber's AG ineligible for SNAP benefits.

**{¶ 9}** The trial court further observed that, because Huber's AG did not meet the gross income eligibility standard, MCDJFS, the State hearing officer, and ODJFS were not required to calculate and compare his AG's net income to the net eligibility standard. Even so, the court noted that Huber's AG's income also did not meet the net income eligibility standard. The deductions that applied to Huber's AG net income calculation included the earned income deduction (20% of gross monthly earned income totaling $778) and the standard deduction ($193). Applying these deductions, Huber's AG's net income totaled $4,810, which exceeded the net income eligibility standard of $1,920. Furthermore, even without Huber's RSDI monthly income of $944, the AG's net income totaled $3,865, which was still over the net income standard of $1,920. Finally, the trial court addressed Huber's argument that he and his wife were self-employed and running an S corporation and thus, there were other deductions that should have been considered in his income determination, which would have made his AG eligible for benefits. The trial court noted that the State hearing officer and ODJFS had found that the purported self-employment income information submitted by Huber was insufficient to verify such income and expenses, as it was impossible to ascertain from the documents what was income and what were expenses. As such, the trial court agreed that MCDJFS appropriately excluded self-employment income in its income determination and in its ultimate decision to terminate Huber's AG's SNAP benefits.

**{¶ 10}** Huber now appeals to this court.

## II.    Assignments of Error

{¶ 11} Huber's assignments of error are difficult to discern. He did not provide a statement of the assignments of error presented for review, with reference to the place in the record where each error was reflected, or arguments with respect to each assignment of error and the reasons in support of those arguments, with citations to authorities, statutes, and parts of the record on which he relied. Despite its attempt to address Huber's appeal, ODJFS points that Huber failed to denote separate assignments of error in his brief as required by App.R. 16(A)(7). We agree.

{¶ 12} App.R. 16 sets forth the appellant's brief requirements on appeal. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

(1) A table of contents, with page references.

(2) A table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited.

(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.

(4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates.

(5) A statement of the case briefly describing the nature of the case, the course of proceedings, and the disposition in the court below.

(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

(8) A conclusion briefly stating the precise relief sought.

App.R. 16(A). "A court of appeals may disregard any assignments of error not separately argued, or any arguments not supported by references to the record." *Am. Gen. Fin. Servs., Inc. v. Mosbaugh*, 2011-Ohio-5557, ¶ 11 (2d Dist.), citing App.R. 12(A)(2); *Countrywide Homes, Inc. v. Swayne,* 2010-Ohio-3903, ¶ 58 (2d Dist.).

**{¶ 13}** We note that "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standard as other litigants. A litigant proceeding pro se 'cannot expect or demand special treatment from the judge, who is to sit as an impartial arbiter.' " *Mosbaugh* at ¶ 12, citing *Dunina v. Stemple,* 2007-Ohio-4719, ¶ 3 (2d Dist.). However, while we agree with ODJFS that Huber's brief did not fully comply with App.R.16, we will proceed to address Huber's presumptive assignments of error and ODJFS's responsive arguments.

## Ohio's SNAP Benefits

**{¶ 14}** Ohio SNAP assists eligible low-income individuals and families to stretch their food budgets and is subsidized by the U.S. Department of Agriculture's Supplemental Nutrition Assistance Program. *See* 7 U.S.C. 2011. The director of ODJFS administers SNAP in accordance with the Food and Nutrition Act of 2008 (7 U.S.C. 2011

et seq.). R.C. 5101.54.

{¶ 15} Participation in the SNAP program is limited to households "whose incomes are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 C.F.R. 273.9(a). To receive SNAP benefits, an applicant or "assistance group" (AG) must submit a request for benefits to the county department for ODJFS and meet the eligibility standards. Adm.Code 5101:4-2-01. An AG is composed of individuals or groups of individuals, such as a family, who live together and customarily purchase food and prepare meals together for home consumption. Adm.Code 5101:4-2-03(A). The monthly SNAP benefit amount is determined by household size, income, and expenses. Adm.Code 5101:4-4-27.

{¶ 16} The income eligibility standards for Ohio SNAP are adjusted annually every October. Adm.Code 5101:4-4-11(A). SNAP eligibility is determined based on gross and net income standards. Adm.Code 5101:4-4-31(Q). Households without an elderly or disabled member must meet both the gross and net income eligibility standards, and the AG's gross income must fall below 130% of the federal poverty line to qualify. *Id.* To determine eligibility, the AG is to have its gross monthly income compared to the gross income eligibility standard for the appropriate AG size. *Id.* To determine an AG's total gross income, the AG's monthly gross income earned by all assistance group members and the total monthly unearned income of all assistance group members are added together, minus earned income exclusions. Adm.Code 5101:4-4-31(R) and (S)(1). When the total monthly gross income is more than the standard for the appropriate AG size, the AG is deemed ineligible for program benefits. *Id.* If the AG's gross monthly income is

equal to or less than the gross income standard for the appropriate AG size, the AG is then to have its net monthly income compared to the income standard for the appropriate AG size to determine eligibility. Adm.Code 5101:4-4-31(Q).

{¶ 17} The net monthly income is calculated by determining the total gross monthly earned income and then multiplying it by twenty percent and subtracting that amount from the AG's total gross income. Adm.Code 5101:4-4-31(S)(2). Several additional deductions are then applied if applicable, including the standard deduction, excess medical deduction, dependent care deduction, legally obligated child support deduction, standard homeless shelter deduction, and any excess shelter cost. Adm.Code 5101:4-4-31(S)(3)-(9). If the AG's net income is less than or equal to the appropriate net income standard for the AG size, the AG's level of SNAP benefits is determined. Adm.Code 5101:4-4-31(Q).

{¶ 18} "Assistance group income" includes all countable income from whatever source as defined in Adm.Code 5101:4-4-19 but excludes income specified in Adm.Code 5101:4-4-13. Countable income is earned income minus the 20% earned income deduction as described in Adm.Code 5101:4-4-23, plus any unearned income. Adm.Code 5101:4-4-19(A). "Earned income" includes, among other things, all wages and salaries of an employee and self-employment income, such as gross income from a self-employment enterprise and income from the sale of any capital goods or equipment related to the business (less any business expense paid from this income). Adm.Code 5101:4-4-19(B)(1) and (2). "Unearned income" includes retirement, survivors, and disability insurance (RSDI) benefits. Adm.Code 5101:4-4-19(C)(2).

**Standard of Review**

{¶ 19} We review a common pleas court's decision in an administrative appeal to determine whether the common pleas court abused its discretion in determining whether reliable, probative, and substantial evidence supported the administrative order. *Gyugo v. Franklin Cty. Bd. of Dev. Disabilities*, 2017-Ohio-6953, ¶ 13, citing *Pons v. State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993). We also exercise plenary review over questions of law, including questions of statutory interpretation. *Id.*, citing *State v. Straley,* 2014-Ohio-2139, ¶ 9. An abuse of discretion requires a finding that the trial court's action was unreasonable, arbitrary, or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St. 3d 157, 161 (1990).

{¶ 20} Huber first contends that his AG's self-employment business consisted of construction work with a plan to shift toward foster parenting in the future. He generally complains that the AG's income was miscalculated because MCDJFS did not properly average anticipated income from self-employment with consideration of fluctuations in income and expenses. In response, ODJFS initially asserts that Huber waived this argument because he failed to raise this issue in the trial court and is precluded from raising it for the first time on appeal. ODJFS also argues that there is no evidence in the record to support Huber's contention that his wife's purported self-employment income was included in his AG's income calculation, and, in any case, his AG's income still exceeds the SNAP income eligibility standard. We agree.

{¶ 21} For determining a SNAP AG's eligibility and monthly benefit, "the county agency is to take into account the income already received by the assistance group during

the certification period and any anticipated income the assistance group and the county agency are reasonably certain will be received during the remainder of the certification period." Adm.Code 5101:4-4-31(A). When the amount of income that will be received is uncertain, the county agency is not to count the uncertain portion in the AG's income. *Id.* When the exact amount of income is not known, that portion of income, which is anticipated with reasonable certainty, is considered income. *Id.*

**{¶ 22}** Income that is received on a monthly basis but fluctuates from month-to-month and income that is received less often than monthly are to be averaged. Adm.Code 5101:4-4-31(I). When averaging income, the county agency is to use the AG's anticipation of income fluctuations over the certification period, but the number of months used to arrive at the average income does not have to be the same as the number of months in the certification period. *Id.* AGs that derive their annual income from self-employment over a period of time shorter than one year are to have their income averaged over a 12-month period so long as the income is not received on an hourly or piecework basis. Adm.Code 5101:4-4-31(J).

**{¶ 23}** The record reflects that Huber did not raise this argument in the trial court or at any other time and raises the argument for the first time in this appeal. A party is precluded from raising an argument on appeal that the party failed to assert in the trial court. *State v. Anderson*, 2017-Ohio-5656, ¶ 4 ("New issues cannot be raised and argued for the first time on appeal."); *State ex rel. Zollner v. Indus. Comm. of Ohio*, 66 Ohio St.3d 276, 278 (1993) (when a party fails to raise an argument in the trial court, he or she waives the right to raise the argument on appeal). In this case, because Huber failed to raise this

argument until now, he has waived the right to raise it.

{¶ 24} Even if Huber were not precluded from raising the argument, we note that MCDJFS did not include any self-employment income in calculating his AG's income for SNAP benefit eligibility. While Huber submitted an apparent bank statement to reflect self-employment income to MCDJFS, MCDJFS did not include it in the AG's income determination because it was insufficient to verify self-employment. At the State hearing, Huber also testified that, in addition to his spouse being employed, she was also self-employed as part of an S corporation, and he provided a spreadsheet showing deposit and debit card transaction amounts without explanation. Following the hearing, the record remained open for Huber to supplement it with additional documentation regarding his wife's self-employment income, but he only submitted her unsupported self-employment income and expenses for the month of December 2022. Income that is received monthly but fluctuates from month-to-month is to be averaged. However, in this case, even assuming Huber presented one month of fluctuating self-employment income, the income had no impact on his ineligibility for SNAP benefits because it was not included in his income determination.

{¶ 25} Huber next asserts that an insurance claim payment from a car accident, which he received and apparently believes was also used in calculating his AG's income, resulted in his AG's income being inappropriately elevated. He contends that the insurance payment should have been excluded from his AG's income calculation. In response, ODJFS again contends that Huber cannot raise this issue for the first time on appeal; it further argues that there is nothing in the record supporting Huber's contention

that any insurance payment increased his AG's income determination. We agree.

{¶ 26} Once again, Huber did not raise this argument in the trial court or otherwise but now seeks to raise it for the first time. As we already explained, he cannot raise this issue for the first time on appeal. Additionally, Huber has not cited anything in the record which showed that the alleged insurance payment increased his AG's income determination and resulted in his SNAP benefit loss.

{¶ 27} The parties do not dispute that, for fiscal year 2023, the maximum gross monthly income (equal to 130% of the federal poverty level) and net monthly income for a three-person AG were $2,495 and $1,920, respectively. Huber's AG's total non-exempt gross monthly income of $5,781 included his wife's monthly earned income from her employment in the amount of $3,893 ($1,811 bi-weekly multiplied by 2.15) and $1,888 in unearned income (Huber's $944 per month and his minor child's $944 per month in RSDI benefits). The AG's total income of $5,781 exceeded the $2,495 maximum gross monthly income for a three-person AG. Even if Huber were no longer receiving his monthly $944 RSDI benefit, his AG's total income of $4,837 still exceeded the $2,495 maximum gross monthly income amount, rendering his AG ineligible for SNAP benefits.

{¶ 28} The analysis could have stopped there because Huber's AG was already ineligible for benefits based on the AG's gross income determination. Still, a net income determination was calculated for Huber's AG; it was determined that his AG's net monthly income after statutory deductions totaled $4,810, which also exceeded the $1,920 statutory net income limit. Lastly, even if Huber no longer received $944 per month in RSDI benefits, his AG's net income at $3,865 still exceeded the net income standard.

{¶ 29} The record supports the trial court's conclusion that Huber's AG's gross and net income exceeded the income eligibility standards for SNAP benefits. Despite Huber's argument, no self-employment income was included in his AG's income calculation because proper verification was not received. While Huber appears to argue that certain deductions should have passed through the S corporation by way of its shareholders and, therefore, should have reduced the AG's gross income for purposes of SNAP benefits, he did not point to any federal or Ohio law providing how this pass-through income impacted the income qualification standard for SNAP benefits.  There was also no evidence that an S corporation even existed, as no business name, articles of incorporation, or any other documentation regarding the S corporation were provided. Moreover, the trial court agreed that the information provided by Huber regarding any self-employment income was insufficient to verify such income, and for this reason unemployment income was not even included or otherwise "averaged" into the AG's income determination. Upon our review of the record, we cannot say that the trial court abused its discretion in determining that reliable, probative, and substantial evidence supported ODFJS's order terminating Huber's SNAP benefits.  Huber's assignments of error are overruled.

### III.    Conclusion

{¶ 30} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.