[Cite as *State v. Yuran*, 2024-Ohio-5655.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JOSEPH P. YURAN,

        Defendant-Appellant.

CASE NO. 2024-T-0045

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 00922

---

# O P I N I O N

Decided: December 2, 2024
Judgment: Affirmed

---

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Bradley G. Olson, Jr.*, Law Offices of Bradley G. Olson, Jr., 109 North Mercer Street, New Castle, PA 16101 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}     Appellant, Joseph P. Yuran, appeals the judgment sentencing him to a total of 7.5 to 10 years of imprisonment following his guilty pleas to aggravated vehicular homicide and operating a motor vehicle while under the influence of alcohol ("OVI"). We affirm.

{¶2}     In November 2023, Yuran was involved in a fatal collision after he failed to stop at an intersection. After the collision, Yuran admitted to responding officers that he had consumed alcohol, and officers noted that Yuran displayed signs of impairment

during field sobriety tests. Yuran was arrested, and he then submitted to urine and breath tests, which indicated that the alcohol content of each was over the legal limit.

{¶3} In January 2024, an indictment was filed in the trial court charging Yuran with one count of aggravated vehicular homicide, a second-degree felony, in violation of R.C. 2903.06(A)(1)(a), (B)(1), and (B)(2)(a); one count of OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(a)(i); and one count of OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(h) and (G)(1)(a)(ii). Yuran initially pleaded not guilty to the charges.

{¶4} Following plea negotiations, Yuran pleaded guilty to amended charges as follow: aggravated vehicular homicide, a second-degree felony, in violation of R.C 2903.06(A)(1)(a), (B)(1), and (B)(2)(a)[1]; and OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(a)(i). The State agreed to dismiss the remaining OVI count. The trial court accepted the guilty pleas, ordered a presentence investigation ("PSI"), and set the matter for sentencing.

{¶5} In a judgment entered on April 26, 2024, the trial court sentenced Yuran to an indefinite term of 7 to 10.5 years of imprisonment on the aggravated vehicular homicide count pursuant to the Reagan Tokes Law, and 180 days of confinement on the OVI count, to be served concurrently.

{¶6} In his three assigned errors, Yuran argues:

> [1.] The trial court's sentence violates the purposes and principles of Ohio's sentencing law as established by O.R.C 2929.11.

---

1. Although the sentencing entry states that the aggravated vehicular homicide count constituted a violation of "R.C. 2903.06(A)(1)(a)&(B)(1)&(2)(a)(i)," R.C. 2903.06(B)(2)(a) does not contain further subdivisions.

2

[2.] The trial court's sentence violates the state and federal constitutional protections against cruel and unusual punishment.

[3.] The trial court made factually inaccurate findings to support the sentence imposed.

{¶7} Yuran challenges his sentence of 7 to 10.5 years of imprisonment on the aggravated vehicular homicide count. Our standard of review of felony sentences is set forth in R.C. 2953.08(G)(2), which provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶8} When sentencing a felony offender, a trial court is guided by the principles and purposes of felony sentencing under R.C. 2929.11 and R.C. 2929.12. However, "even though a trial court is required to consider the R.C. 2929.11 and R.C. 2929.12 factors, it is not required to make specific findings on the record to comport with its statutory obligations." *State v. Shannon*, 2021-Ohio-789, ¶ 17 (11th Dist.), citing *State v. Parke*, 2012-Ohio-2003, ¶ 24 (11th Dist.).

3

{¶9} With respect to our review of a felony sentence, because R.C. 2953.08(G)(2)(a) is specifically applicable only to certain divisions of R.C. 2929.13, 2929.14, and 2929.20, it does not provide a basis for this court to review whether the record supports the court's findings under R.C. 2929.11 and 2929.12. *See State v. Jones*, 2020-Ohio-6729, ¶ 28. Moreover, our review of a felony sentence under R.C. 2953.08(G)(2)(b) is limited to whether the sentence is clearly and convincingly "contrary to law." "[A] sentence is contrary to law when it is 'in violation of statute or legal regulations,'" such as when the sentence is not within the statutory range for the offense or when the trial court *failed to consider* R.C. 2929.11 and R.C. 2929.12. *State v. Meeks*, 2023-Ohio-988, ¶ 11 (11th Dist.), quoting *Jones* at ¶ 34; *Shannon* at ¶ 11. Thus, neither division (G)(2)(a) nor (G)(2)(b) of R.C. 2953.08 permits this court "to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42.

{¶10} Here, Yuran does not dispute that his sentence on the aggravated vehicular homicide count falls within the statutory range for the offense. *See* R.C. 2929.14(A)(2)(a) and 2929.144(B)(1) (felony of the second degree punishable by indefinite prison term consisting of a minimum term of two, three, four, five, six, seven, or eight years and a maximum term equal to the minimum term imposed on the offender plus fifty percent of that term). Nor did the trial court fail to consider R.C. 2929.11 and 2929.12. To the contrary, although not required, the trial court explicitly set forth the following findings at the sentencing hearing, and later in its judgment entry:

> The defendant's drunk driving conduct is more serious than the conduct normally constituting the offense; the mental

4

injury suffered by the family of the victim due to the conduct of the victim due to the conduct of the defendant; the innocent victim in this matter was killed due to the conduct of the defendant; the defendant is likely to commit future drunk driving offenses based on his prior arrests and lack of treatment for alcohol addiction; the defendant was on probation for a prior drunk driving offense and had an additional offense pending against him in Pennsylvania before this offense.

Now, the Court has also considered mitigating factors, that the defendant is suffering from alcohol addiction; the defendant has accepted full responsibility for his actions and the killing of the victim. And can I tell you, in years of doing drunk driving defendants, it's a rare occasion when defendants do stand up and accept responsibility. The defendant has shown remorse for his actions, and the defendant was a police officer, a veteran, and led a law-abiding life prior to the eight months before this incident.

{¶11} In his first assigned error, Yuran's arguments essentially contend that the record does not support the harshness of his sentence after consideration of the purposes of felony sentencing contained in R.C. 2929.11. However, for the reasons set forth above, "we cannot assess whether, under R.C. 2929.11, his sentence was unsupported by the record. We must simply look to whether it was within the statutory range (it was), and whether the trial court considered the purposes and principles of felony sentencing (it did)." *See Shannon*, 2021-Ohio-789, ¶ 12 (11th Dist.).

{¶12} Further, Yuran contends that his sentence is inconsistent with that of similarly situated offenders, citing two trial court cases where the defendants were sentenced on aggravated vehicular homicide charges and received far lesser prison sentences. To the extent that we may review such an argument following the decision in *Jones*, 2020-Ohio-6729, it lacks merit. The trial court considered the R.C. 2929.11 and 2929.12 factors, the sentence is within the statutory range of sentencing for the offense, and despite the sentence in this case being more severe than the two cases cited by

5

Yuran, the sentence is not so unusual as to be outside the mainstream of local judicial practice. *See State v. Hoffman*, 2023-Ohio-2645, ¶ 12-16 (11th Dist.), *appeal not allowed*, 2023-Ohio-4200.

{¶13} Also, in his first assigned error, Hoffman maintains that his sentence was disproportionate to his conduct. However, again, this court may not substitute our judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.

{¶14} Accordingly, Yuran's first assigned error lacks merit.

{¶15} Despite the confines of our review pursuant to statute, we may review whether a sentence is so disproportionate to a defendant's conduct as to violate the Eighth Amendment to the United States Constitution and Article I, Section 9, of the Ohio Constitution, which Yuran argues in his second assigned error. Each of these constitutional provisions provide, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

{¶16} "'A key component of the Constitution's prohibition against cruel and unusual punishment is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense."'" *State v. Anderson*, 2017-Ohio-5656, ¶ 27, quoting *State v. Moore*, 2016-Ohio-8288, ¶ 31, quoting *Weems v. United States*, 217 U.S. 349, 367 (1910). "To constitute cruel and unusual punishment, 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" *Anderson* at ¶ 27, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964). "'As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.'" *State v. Hairston*, 2008-Ohio-2338, ¶ 21, quoting

6

*McDougle* at 69, citing *Martin v. United States*, 317 F.2d 753 (9th Cir. 1963), *overruled on other grounds*, *United States v. Bishop*, 412 U.S. 346 (1973); *Pependrea v. United States*, 275 F.2d 325 (9th Cir. 1960); and *United States v. Rosenberg*, 195 F.2d 583 (2d Dist. 1952).

**{¶17}** Here, as set forth above, Yuran's sentence falls within the statutory range of punishment, and the trial court considered the appropriate factors when imposing sentence. Further, after review, we cannot say that the sentence is "grossly disproportionate or shocking to a reasonable person or to the community's sense of justice" as to "constitute cruel and unusual punishment." *See Hairston* at ¶ 22.

**{¶18}** Therefore, Yuran's second assigned error lacks merit.

**{¶19}** In his third assigned error, Yuran argues that the trial court erred in finding that he was on probation at the time of the offense and that he would be eligible for credits to reduce his minimum sentence.

**{¶20}** We first note that, although the trial court considered the PSI at sentencing, the PSI has not been transmitted on appeal. Thus, we are unable to determine whether the PSI indicated that Yuran was on probation at the time of the offense. Regardless, during the plea hearing, Yuran affirmatively indicated to the trial court that he was on probation as reflected by the following exchange:

> THE COURT: Are you on any kind of probation or community control in this state or any other state?
>
> [YURAN]: Pennsylvania, sir.
>
> THE COURT: What are you on probation for over there?
>
> [YURAN]: DUI.

7

Case No. 2024-T-0045

THE COURT: You also have a charge pending over there, is that correct, or no?

[YURAN]: It is pending.

THE COURT: Have you been talking to your parole officer over there or your probation officers?

[YURAN]: No. It is pending.

{¶21} Further, as set forth above, at the sentencing hearing, the trial court found "the defendant was on probation for a prior drunk driving offense and had an additional offense pending against him in Pennsylvania before this offense." The record does not indicate any attempt by the defense to dispute that Yuran was on probation for a prior driving under the influence offense. Accordingly, to the extent that we can review Yuran's argument that the trial court erred in this finding, the record does not support Yuran's contention.

{¶22} Last, Yuran maintains that the trial court advised him at sentencing that he would be eligible for earned reduction of his minimum prison term. However, he maintains that the trial court misstated the law because he is not eligible for a recommended reduction of his prison term until his mandatory term has expired. Yuran maintains that this matter should be remanded to the trial court to determine whether a shorter sentence should be imposed because the trial court may have relied on Yuran's ability to earn reduction of his minimum prison term when it announced the sentence. Alternatively, Yuran requests this court declare that he is not statutorily prohibited from earning credit toward his mandatory sentence.

{¶23} However, the issue of whether an offender sentenced pursuant to the Reagan Tokes Law is eligible for a reduction in the offender's mandatory sentence is not

8

squarely before this court. *Compare State v. Grays*, 2023-Ohio-2482 (8th Dist.) (en banc decision addressing whether trial court erroneously advised defendant *during plea colloquy* that he was eligible for certain sentencing reductions to his mandatory prison terms). At sentencing, the trial court stated:

> You may be eligible to earn one to five days of credit for each month that you productively participate in education programs, vocational training, employment in prison industries, treatment for substance abuse, or any other constructive program that is offered by the Ohio Department of Corrections. Those credits must be earned; they're not awarded.

**{¶24}** We agree with the State that the trial court made no assurances to Yuran that he would be able to earn credits toward his minimum sentence. Further, it does not appear that the ability to earn such a credit factored in the trial court's determination of an appropriate sentence.

**{¶25}** Next, unlike the cases addressed in *Grays* where a similar advisement was made during *the plea hearing*, the trial court here provided this advisement *at sentencing*, and Yuran does not challenge his plea based upon any belief that he would be eligible for a reduction to the minimum term imposed. Therefore, we do not address whether an offender in Yuran's position is legally barred from earning credits to reduce his minimum term. If the trial court erred in advising Yuran that he might be eligible for such a reduction, this error caused him no prejudice. Conversely, if the trial court correctly informed Yuran of his potential eligibility for a reduction, then there is no error for this court to review.

9

Case No. 2024-T-0045

{¶26} For the foregoing reasons, Yuran's third assigned error lacks merit.

{¶27} The judgment is affirmed.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-T-0045