[Cite as *State v. Wright*, 2026-Ohio-1714.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
COSHOCTON COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 0028 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Coshocton County Court of Common Pleas, Case No. 2025 CR 0030 |
| WILLIAM D.L. WRIGHT | |
| Defendant - Appellant | Judgment: Affirmed |
| | Date of Judgment Entry: May 11, 2026 |

BEFORE:   Andrew J. King, William B. Hoffman, and Kevin W. Popham, Judges

APPEARANCES: Chrishana L. Carroll, for Plaintiff-Appellee; Todd Barstow, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Appellant William Wright ["Wright"] appeals his conviction and sentence entered in the Court of Common Pleas for Coshocton County, Ohio after his negotiated guilty plea. For the reasons below, we affirm the decision of the trial court.

**Facts and Procedural History**

{¶2} On April 9, 2025, Wright was indicted on one count of Aggravated Possession of Drugs [methamphetamine, 5 times bulk amount, less than 50 times bulk amount], a felony of the second degree in violation of R.C. 2925.11(A)/(C)(1)(c).

**{¶3}** On October 14, 2025, Wright appeared with counsel and pled guilty to the charge.

**{¶4}** Prior to accepting Wright's plea, the trial court informed Wright,

[I]t's this Court's position that you are not eligible for a reduction of the minimum portion of your prison term because it's mandatory and, therefore you cannot receive a reduction of your prison sentence for exceptional conduct or adjustment to incarceration.

(Plea T. at 7-8.) Wright told the court that he understood he was not eligible for a sentence reduction. (Plea T. at 8). Wright executed a written guilty plea. (Plea T. at 15-16.) The record demonstrates the trial judge very carefully adhered to, and complied with all requirements of, Criminal Rule 11. The trial judge conducted a complete and thorough colloquy. Wright acknowledged he understood his rights, the charges, the plea agreement, the maximum penalties, and the specific constitutional rights he was waving with the plea. The record further supports that the trial judge substantially complied with Crim.R. 11 mandates for non-constitutional right advisements. (Plea T. at 5-16.)

**{¶5}** On December 15, 2025, Wright appeared with counsel for sentencing. After reviewing the presentence investigation report ("PSI"), and hearing arguments from counsel, the trial court imposed a mandatory sentence of a minimum of seven years and a potential maximum of ten and one-half years. The trial court also informed Wright that he would be ineligible for any reduction to that sentence. (Sent. T. at 13.)

**Assignments of Error**

**{¶6}** Wright raises two assignments of error,

**{¶7}** "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY SENTENCING HIM IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES."

**{¶8}** "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING THAT HE WAS INELIGIBLE FOR A REDUCTION IN HIS PRISON TERM FOR ENGAGING IN EXCEPTIONAL CONDUCT OR ADJUSTMENT TO INCARCERATION."

I.

**{¶9}** In his first assignment of error, Wright argues his sentence is contrary to law because the trial court failed to give full consideration to the purposes and principles of felony sentencing. We disagree.

**Standard of Review**

**{¶10}** Pursuant to R.C. 2953.08(F), when reviewing felony sentences an appellate court reviews the entire record, including oral and written statements and the PSI. See *State v. Jones*, 2020-Ohio-6729, ¶ 36; *State v. Howell*, 2015-Ohio-4049, ¶ 31 (5th Dist.). A reviewing court may modify or vacate a sentence only if it clearly and convincingly finds that (1) the record does not support the trial court's findings under the relevant statutory provisions, or (2) the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Bonnell*, 2014-Ohio-3177, ¶ 28. A sentence is not clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range. *State v. Pettorini*, 2021-Ohio-1512, ¶¶ 14-16 (5th Dist.), quoting *State v. Dinka*, 2019-Ohio-4209, ¶ 36 (12th Dist.).

**{¶11}** An appellate court may not modify a sentence merely because it disagrees with the trial court's weighing of factors under R.C. 2929.11 and 2929.12. *Jones* at ¶ 39. However, where a sentence is based on considerations extraneous to those statutes, it is

contrary to law and reviewable. *State v. Bryant*, 2022-Ohio-1878, ¶ 22.

**Purposes and principles of felony sentencing — R.C. 2929.11**

{¶12} R.C. 2929.11(A) directs that felony sentences be reasonably calculated to achieve the dual purposes of protecting the public from future crime and punishing the offender, using the minimum sanctions necessary to accomplish those ends. R.C. 2929.11(B) further requires that the sentence be commensurate with and not demeaning to the seriousness of the offender's conduct and consistent with sentences for similar crimes by similar offenders.

**Seriousness and recidivism factors — R.C. 2929.12**

{¶13} Under R.C. 2929.12, the court must consider factors bearing on the seriousness of the offense and the likelihood of recidivism. Although a trial court must "consider" these factors, it need not make specific factual findings or recite the statutory language, so long as the record demonstrates consideration. *Jones*, ¶ 20; *State v. Webb*, 2019-Ohio-4195, ¶ 19 (5th Dist.); *State v. Clanin*, 2024-Ohio-2445, ¶ 14 (5th Dist.).

{¶14} Where the record is silent, a presumption arises that the trial court considered the factors under R.C. 2929.11 and R.C. 2929.12. *State v. Hannah*, 2015- Ohio-4438, ¶ 13 (5th Dist.); *State v. Blosser*, 2024-Ohio-173, ¶¶ 16-17 (5th Dist.).

**Application**

{¶15} Here, the sentencing transcript and judgment entry reflect that the trial court expressly considered R.C. 2929.11 and R.C. 2929.12, as well as the PSI, and the arguments of counsel. The trial court noted that Walters has felony convictions for drug offenses in 2006, 2010, 2013, 2017 and 2019. (Sent. T. at 8.) The court specifically noted that it considered R.C. 2929.12, R.C. 2929.13, and R.C. 2929.14 in fashioning its sentence.

(*Id.* at 9.) The record reveals that Wright's ORAS score is in the high range at 28. (*Id.* at 3.) The court heard that Wright had been employed and, as a result of losing his job, went downhill. The amount of methamphetamine involved was 120 grams. (*Id.* at 4.) The trial court also considered that the co-defendant's charges had been amended to a third-degree felony. (*Id.* at 4-5.)

**{¶16}** Upon review, we find that the trial court's sentence follows applicable rules and sentencing statutes. While Wright may disagree with the weight given to the sentencing factors by the trial judge, his sentence was within the applicable statutory range and not based on impermissible considerations. Therefore, we have no basis for concluding that the sentence is contrary to law.

**{¶17}** Wright's first assignment of error is overruled.

## II.

**{¶18}** In his second assignment of error, Wright argues that the trial court erred in advising him, during the plea colloquy, that he was not eligible for a reduction of his mandatory prison term under the Earned Reduction of Minimum Prison Term ("ERMPT") provisions in R.C. 2967.271(F). He relies on *State v. Grays*, 2023-Ohio-2482 (8th Dist.) (en banc), which held that such reductions are available even for certain mandatory indefinite sentences.

**{¶19}** This Court disagrees.

### Standard of Review

**{¶20}** Because this assignment of error presents an issue of statutory interpretation, it raises a question of law that we review de novo. *Med. Mut. of Ohio v.*

*Schlotterer*, 2009-Ohio-2496, ¶ 13; *State v. Pariag*, 2013-Ohio-4010, ¶ 9; *Hurt v. Liberty Twp.*, 2017-Ohio-7820, ¶ 31 (5th Dist.).

{¶21} ERMPT is codified in R.C. 2967.271(F), as part of Ohio's sentencing framework enacted under the Reagan Tokes Law.

**Earned reduction of minimum prison term (ERMPT)**

{¶22} The process for ERMPT is governed by R.C. 2967.271. Under R.C. 2967.271(B), offenders serving a non-life felony indefinite prison term are presumed to be released at the end of their minimum term or on their presumptive earned early release date, whichever occurs first. This presumption may be rebutted by the Department of Rehabilitation and Correction under R.C. 2967.271(C) if, after a hearing, it determines that the offender has engaged in serious institutional misconduct, poses an ongoing threat to society, has recently been placed in extended restrictive housing, or is classified at a higher security level. If presumed early release is rebutted, the department may extend incarceration for a reasonable additional period under R.C. 2967.271(D), not exceeding the maximum sentence, and may repeat this process as necessary until the maximum term is reached.

{¶23} ERMPT is initiated under R.C. 2967.271(F) by the director of the Department of Rehabilitation and Correction, not the offender. Eligible offenders, excluding those convicted of sexually oriented offenses under R.C. 2967.271(F)(8), may be considered based on exceptional conduct or positive adjustment to incarceration. An incarcerated adult may submit a petition that demonstrates exceptional conduct or adjustment to incarceration, or both, to be considered for a recommended reduction. Adm.Code 5120-2-19(C). If DRC believes ERMPT is warranted, the director submits a

written recommendation to the sentencing court under R.C. 2967.271(F)(1), proposing a reduction of five to fifteen percent of the minimum term, along with supporting documentation of the offender's institutional record. This recommendation creates a rebuttable presumption that the court will grant the reduction.

{¶24} To award ERMPT, the sentencing court must hold a hearing pursuant to R.C. 2967.271(F)(3), with notice provided to the prosecutor and victim. At the hearing, the court considers the offender's conduct, rehabilitation efforts, institutional record, and risk factors outlined in R.C. 2967.271(F)(4), along with the sentencing factors in R.C. 2929.12(B)-(D). The court must grant the reduction unless it finds that the presumption of reduction has been rebutted due to factors such as serious misconduct, lack of rehabilitation, continued danger to society, high security classification, failure to complete programming, or lack of a suitable residence upon release. If granted, the reduction shortens the minimum term and establishes the offender's presumptive earned early release date under R.C. 2967.271(F)(6). If denied, the original minimum term remains in effect.

## Jurisdictional Concerns

{¶25} In *State v. Grays*, the defendant argued his guilty pleas were not knowingly, voluntarily, and intelligently made because the trial court inaccurately advised him that he was entitled to ERMPT on a mandatory, minimum prison term. Grays contended that "by misstating the law and advising [him] that his mandatory prison sentence could be reduced, [he] was prejudiced and improperly induced into entering a guilty plea due to the inaccurate statement of law made by the trial court." Grays suggested that but for the

good-time credit advisement, he would not have pleaded guilty. *State v. Grays*, 2023-Ohio-221, ¶ 7 (8th Dist.) (*Grays I*).

{¶26} In a subsequent en banc decision, the court clarified that Crim.R. 11 does not require a trial court to inform a defendant, prior to accepting a guilty plea, of eligibility for sentencing reductions unless such eligibility is incorporated into the plea agreement. *State v. Grays*, 2023-Ohio-2482, ¶ 4 (8th Dist.) (*Grays II*). *See also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary"); *Xie v. Edwards,* 1994 U.S. App. LEXIS 23606, at *4  (6th Cir., 1994)("parole eligibility is not a 'direct consequence' of a conviction, and a defendant need not be informed of it") (citation omitted); *State v. Xie*, 62 Ohio St.3d 521, 524-525, n.2 (1992) (Xie's time off for good behavior is tentative and subject to change if he fails to maintain good behavior. *See*, Ohio Adm.Code 5120-2-05(G).  In addition, other factors could also affect Xie's parole date.). As the Supreme Court of Ohio has recognized, "a defendant who bases a plea decision on parole eligibility will often be relying on a factor beyond the prediction of defense counsel, and beyond the actual control of a defendant." *Xie* at ¶¶ 524-525. We believe the same can be said of a defendant's reliance on eligibility for ERMPT.

{¶27} The en banc court in *Grays II* further emphasized that an erroneous statement of law during a Crim.R. 11 colloquy bears directly on whether a defendant's plea is knowing, intelligent, and voluntary. Consistent with that principle, Grays repeatedly asserted that he would not have pleaded guilty but for the trial court's incorrect advisement.

**{¶28}** Wright's circumstances differ in a critical and dispositive respect. Unlike the defendant in *Grays*, Wright was expressly informed by the trial court, prior to entering his guilty plea, that he was not eligible for ERMPT. (Plea Tr. 7-8.) Wright affirmatively acknowledged his understanding. (*Id.* at 8.) Moreover, Wright did not seek to withdraw his guilty plea at any stage of the proceedings, nor does he contend on appeal that his plea was not entered knowingly, intelligently, and voluntarily. This absence of both misinformation and any claimed reliance on ERMPT distinguishes this case from *Grays* and undermines any suggestion that ERMPT eligibility played a role in Wright's decision to plead guilty. *See State v. Yuran,* 2024-Ohio-5655. ¶ 25 (11th Dist.) ("Yuran does not challenge his plea based upon any belief that he would be eligible for a reduction to the minimum term imposed.").

**{¶29}** That distinction is legally significant. In *Grays*, the claimed defect arose from an affirmative misstatement of law that the defendant alleged materially affected his plea decision. Here, by contrast, the trial court provided an advisement that ERMPT did not apply in his case, and the record reflects no reliance, confusion, or prejudice in connection with Wright's plea. Accordingly, the due process concerns that animated the analysis in *Grays* are not present in this case.

**{¶30}** However, the accuracy of the trial court's advisement carries independent legal consequences. As the en banc panel observed in *Grays*, "[t]he legality of such an advisement, if given, is undoubtedly a repeatable legal issue that has significant liberty implications for defendants who are pleading or have already pleaded guilty to first- or second-degree felony offenses carrying mandatory prison terms since March 22, 2019." *Grays II*, ¶ 10.

**{¶31}** Although Wright's guilty plea was entered knowingly, intelligently, and voluntarily and is not subject to challenge on that basis, if the trial court chooses to advise a defendant concerning his eligibility for ERMPT, the trial court must correctly determine and state a defendant's eligibility for ERMPT. Thus, even in the absence of a plea-related defect, the accuracy of the trial court's advisement remains consequential. If the trial court erred and Wright is, in fact, eligible for ERMPT, the advisement may result in prejudice by leading the Ohio Department of Rehabilitation and Correction to conclude that he is ineligible for such consideration, and therefore, leading the director to not submit a written recommendation for reduction to the sentencing court under R.C. 2967.271(F)(1).

**{¶32}** Despite Wright's forfeiture and his lack of a plain error showing, we may still review this challenge; appellate courts have the discretion to consider constitutional challenges to the application of statutes despite forfeiture "where the rights and interests involved may warrant it." *State v. Quarterman*, 2014-Ohio-4034, ¶ 16, quoting *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus. *See also State v. Rush,* 83 Ohio St.3d 53, 59 (1998); *State v. Dames,* 2020-Ohio-4991, ¶ 14 (8th Dist.).

**{¶33}** Therefore, we will review Wright's assignment of error.

**The Eighth District's Decision in *Grays***

**{¶34}** We begin by noting that in *State v. Grays*, the Eighth District, sitting en banc, addressed whether defendants subject to indefinite sentences under the Reagan Tokes Law may be advised that they are eligible to earn a reduction of their minimum term for exceptional conduct. The en banc decision resolved a conflict over whether defendants receiving mandatory indefinite prison terms under the Reagan Tokes Law

may be told during their plea hearings that they can earn a reduction of their minimum sentence for exceptional conduct. The court held that this advisement is legally correct because R.C. 2967.271(F) allows earned reductions for all non-life indefinite sentences except sexually oriented offenses, and, in accordance with R.C. 1.51 this later-enacted, more specific provision prevails over the broader restrictions in R.C. 2929.13(F). As a result, the court overruled prior precedent (*State v. Bobo*, 2022-Ohio-3555 (8th Dist.)) and confirmed that defendants like Grays are indeed eligible for the 5–15% earned-reduction provision, making the trial court's plea advisement proper.

### Analysis

{¶35} The question before this Court is straightforward: does ERMPT - R.C. 2967.271(F) - apply to prison terms that the General Assembly has expressly made mandatory under R.C. 2929.13(F)? We find it does not. By definition and by statute, mandatory prison terms are not subject to reduction, and, to be sure, nothing in the ERMPT framework alters that rule.

### Statutory Construction

{¶36} The Court's task in interpreting a statute is to give effect to legislative intent as expressed in the statutory language itself. *Henry v. Central Natl. Bank*, 16 Ohio St.2d 16, 20 (1968). The analysis begins and often ends with the text. Where the language is clear, "unequivocal and definite," it must be applied as written. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106 (1973). Courts are not permitted to add words the legislature did not use or to ignore words it did. *Columbus–Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127 (1969).

**{¶37}** R.C. 1.42 reinforces this principle by requiring that words be given their ordinary meaning unless a technical meaning applies. Under that framework, "shall" denotes a mandatory obligation, while "may" confers discretion. *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971). These terms are not interchangeable, and courts may not treat them as such absent clear legislative direction.

## Mandatory Means *Mandatory*

**{¶38}** R.C. 2929.13(F) reflects an unambiguous legislative judgment: certain offenses require prison terms that must be imposed and must be served. The statute does more than mandate incarceration. It expressly prohibits reducing those terms through judicial release, earned credit, or "**any other provision of Chapter 2967** or Chapter 5120," unless a specific exception applies. (Emphasis added.) ERMPT, codified in R.C. 2967.271(F), falls squarely within Chapter 2967. It is therefore subject to this prohibition.

**{¶39}** There is no conflict between R.C. 2929.13(F) and R.C. 2967.271(F), and thus no need to invoke R.C. 1.51. The statutes operate in harmony. R.C. 2967.271(F) establishes a general earned reduction mechanism. R.C. 2929.13(F) carves out a clear exception for mandatory terms and removes them from all reduction schemes. Reading the statutes together, ERMPT applies only where the underlying sentence is legally reducible. Mandatory sentences are not.

**{¶40}** Nor does R.C. 2967.271(F)(8) suggest otherwise. That provision categorically excludes all offenders serving non-life, indefinite sentences for sexually oriented offenses from ERMPT eligibility. The statute applies uniformly to this entire class of offenders and contains no language suggesting a distinction between mandatory and non-mandatory components of those sentences. Its command is absolute—ERMPT

is barred in both situations. R.C. 2967.271(F)(8)'s function is categorical exclusion, not silent expansion. The absence of an explicit reference to mandatory terms within R.C. 2967.217 does not create an implied exception to R.C. 2929.13(F)'s broad prohibition. If the General Assembly intended ERMPT to apply to mandatory sentences, it would have said so. It did not.

{¶41} Courts may not create such an exception by implication. The legislature has made a deliberate policy choice that certain offenders serve fixed, nonreducible terms. *Dura lex, sed lex* - that choice must be enforced as written.

**Persuasive Authority**

{¶42} Although ERMPT has not yet been squarely addressed in a controlling decision, recent appellate authority interpreting Ohio's mandatory sentencing framework strongly supports the conclusion that reduction mechanisms cannot apply to mandatory prison terms.

{¶43} In *State v. Armstead*, 2026-Ohio-999 (10th Dist.), the Tenth District conducted a detailed analysis of what constitutes a "mandatory prison term" under Ohio law and, more importantly, what that designation requires. The defendant received an indefinite sentence that included a term for felonious assault accompanied by a firearm specification. The trial court attempted to treat that term as "mandatory" only in the sense that it had to be imposed, while still permitting the possibility of reduction through mechanisms such as judicial release.

{¶44} The Tenth District rejected that distinction outright. Relying on the statutory definition in R.C. 2929.01(X) and the Supreme Court's decision in *State v. Logan*, 2025-Ohio-1772, the court explained that a prison term required under R.C.

2929.13(F) is mandatory in every relevant sense. That is, it must be imposed, and it must be served. The court emphasized that Ohio's sentencing scheme does not recognize a partial or diluted form of mandatory sentencing. Once a term falls within R.C. 2929.13(F), it is categorically removed from all reduction mechanisms unless the legislature has expressly provided otherwise.

{¶45} Critically, the *Armstead* court grounded its reasoning in the structure of the sentencing statutes as a whole. It noted that R.C. 2929.13(F) operates in tandem with R.C. 2929.01(X), which defines "mandatory prison term," and with provisions such as R.C. 2929.20 and R.C. 2967.193, which govern sentence reduction. Read together, these statutes form a coherent system: mandatory terms are those that are both required to be imposed and insulated from reduction. Allowing courts to treat such terms as reducible would collapse that structure and render the statutory definition meaningless.

{¶46} The Tenth District also relied on *Logan*, wherein the Supreme Court of Ohio clarified that when a statute requires the imposition of a prison term in conjunction with a firearm specification, that requirement extends to the underlying felony. Because Ohio law prohibits mixing community control with a required prison term for the same offense, the entire sentence becomes mandatory. The Tenth District correctly recognized that this reasoning forecloses any attempt to separate "imposition" from "service." The statutory scheme does not permit that divide.

{¶47} By contrast, the Eighth District's approach, reflected in *State v. Nicholson*, 2025-Ohio-5411 (8th Dist.), and similar cases, introduces a distinction that the statutes themselves do not support. In *Nicholson*, the court concluded that a sentence could be "mandatory" for purposes of imposition but still subject to reduction through earned

credit. That conclusion rests on the premise that "mandatory" does not necessarily mean "nonreducible."

**{¶48}** That premise cannot be reconciled with the text of R.C. 2929.13(F). The statute does not merely require that a prison term be imposed. It goes further and expressly prohibits reducing that term through a broad range of mechanisms, including "any other provision of Chapter 2967." This language leaves no room for the type of partial mandatory classification adopted in *Nicholson*. By focusing narrowly on whether a prison term must be imposed, the Eighth District's analysis effectively reads the anti-reduction language out of the statute.

**{¶49}** Moreover, the *Nicholson* line of cases risks undermining the legislature's policy choices. If a sentence deemed "mandatory" can nonetheless be shortened through administrative or statutory mechanisms, then it is not truly mandatory at all. The General Assembly used expansive and unqualified language to prevent precisely that result. Courts are not free to reintroduce discretion where the legislature has removed it.  It is the role of the judiciary, and by extension of this Court, to apply the law as written by the legislative branch.  The judiciary is not free to legislate from the bench.

**{¶50}** When viewed against this backdrop, *Armstead* provides the more faithful and internally consistent interpretation of Ohio's sentencing statutes. Its reasoning applies with full force here. ERMPT, like judicial release and earned credit, is a mechanism that reduces the time an offender must serve. Because R.C. 2929.13(F) expressly prohibits any such reduction for mandatory prison terms absent a specific exception, ERMPT cannot apply unless the statute affirmatively says so.

**{¶51}** No such exception exists. And just as the Tenth District refused to recognize a textual distinction that would dilute the meaning of "mandatory," this Court declines to extend ERMPT into a domain the legislature has expressly placed beyond its reach.

**Application**

**{¶52}** ERMPT is a sentence reduction mechanism. It cannot apply to a sentence the legislature has expressly made nonreducible. Under R.C. 2929.13(F)(5), Wright's second-degree felony drug offense requires a mandatory prison term, and the statute expressly provides that the court "shall not reduce" that term except where specifically authorized. No such authorization exists for ERMPT.

**{¶53}** Accordingly, once Wright's sentence is properly classified as mandatory, it is ineligible for reduction through ERMPT or any other mechanism in Chapter 2967. The statutory command is clear, and it must be enforced as written.

**Conclusion**

**{¶54}** The statutory framework leaves no room for ambiguity. R.C. 2929.13(F) reflects a clear legislative command that certain prison terms are mandatory, both in their imposition and in their service, and that they "shall not" be reduced through any mechanism contained in Chapter 2967 unless the General Assembly expressly provides otherwise. ERMPT, codified in R.C. 2967.271(F), is such a mechanism. It therefore cannot apply to mandatory prison terms.

**{¶55}** Nothing in the text of R.C. 2967.271 suggests an intent to override or create an exception to R.C. 2929.13(F). Reading the statutes together, as this Court must, confirms that ERMPT operates only where a sentence is legally subject to reduction. Mandatory sentences are not. To hold otherwise would require the Court to ignore the

plain language of R.C. 2929.13(F), dilute the meaning of "mandatory," and create an exception the legislature chose not to enact.

{¶56} Therefore, the trial court did not err in advising Wright, during the plea colloquy, that he was not eligible for a reduction of his mandatory prison term under the Earned Reduction of Minimum Prison Term ("ERMPT") provisions in R.C. 2967.271(F).

{¶57} Wright's second assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Court of Common Pleas for Coshocton County, Ohio is affirmed. Costs to be paid by Appellant William Wright.

By: Popham, J.

King, P.J. and

Hoffman, J., concur